EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Moisés Ibarra González<br><br>Peticionario<br><br>v.<br><br>Departamento de Corrección y Rehabilitación<br><br>Recurrido | Certiorari<br><br>2015 TSPR 146<br><br>193 DPR ____ |

Número del Caso: CC-2015-339

Fecha: 3 de noviembre de 2015

Tribunal de Apelaciones:

Región Judicial de San Juan

Abogada de la Parte Peticionaria:

Lcda. Iris Yaritza Rosario Nieves
Sociedad Para Asistencia Legal

Materia: Resolución del Tribunal con Voto de Conformidad y Voto Particular Disidente

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Moisés Ibarra González

    Peticionario

         v.                    CC-2015-339        Certiorari

Departamento de Corrección
y Rehabilitación

    Recurrido

RESOLUCIÓN

San Juan, Puerto Rico, a 3 de noviembre de 2015.

A la moción de reconsideración, no ha lugar.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado Juez Rivera García emitió un Voto Particular de Conformidad al cual se unió el Juez Asociado señor Martínez Torres. El Juez Asociado señor Estrella Martínez emitió un Voto Particular Disidente al cual se unió la Jueza Presidenta señora Fiol Matta.

La Juez Asociada señora Rodríguez Rodríguez proveería ha lugar y hace constar las siguientes expresiones a las cuales se una la Jueza Asociada Oronoz Rodríguez:

> "Por entender que el *Manual para la clasificación de confinados* establece un proceso orientado a la rehabilitación del convicto, declararía *ha lugar* el recurso de reconsideración presentado. Indudablemente, este proceso de clasificación aspira a ubicar al confinado en el nivel de custodia menos restrictivo posible en atención

al comportamiento de éste *durante* el término de su reclusión. Criterios subjetivos exógenos, tal y como las particularidades que resultaron en su sentencia, no deben incidir en lo que supone ser una evaluación objetiva de su comportamiento *dentro* de la institución penal. En el pasado, al afirmar que la conducta nociva remota de un confinado debe ceder ante comportamiento reciente satisfactorio, hemos afianzado nuestro compromiso con el mandato constitucional de propender "el tratamiento adecuado de los delincuentes para hacer posible su rehabilitación moral y social". Const. P.R. Art. VI, Sec. 19. Véase, además *López Borges v. Adm. de Corrección*, 185 D.P.R. 603 (2012)."

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Moisés Ibarra González                                    *Certiorari*

      Peticionario

         v.
                            CC-2015-0339

Departamento de Corrección
y Rehabilitación

      Recurrido

Voto de Conformidad emitido por el Juez Asociado señor RIVERA GARCÍA al que se unió el Juez Asociado señor MARTÍNEZ TORRES.

En San Juan, Puerto Rico, a 3 de noviembre de 2015.

En nuestra función revisora, debemos ser muy cautelosos al momento de revisar las determinaciones que toma el Departamento de Corrección y Rehabilitación de Puerto Rico con relación al nivel de custodia de los confinados. Por un lado, no podemos pretender negarle la flexibilidad que necesita ese Departamento de la Rama Ejecutiva para administrar el complejo sistema carcelario de la Isla y en particular, el nivel de custodia que se asigna a cada reo. Por otro lado, tenemos el deber de cerciorarnos de que se cumpla el mandato constitucional de rehabilitación que establece el Art. VI, Sec. 19 de la Constitución de Puerto Rico, LPRA Tomo I.

En esa encomienda, debemos tener presente que las determinaciones del Departamento de Rehabilitación y Corrección están revestidas de una presunción de corrección y que no debemos sustituir nuestro criterio por el de la agencia. González Segarra et al. v. CFSE, 188 DPR 252 (2013). Cimentándonos en esa norma de deferencia y en los fundamentos que detallo a continuación, estoy conforme con la Resolución del Tribunal que antecede que declara sin lugar la moción de reconsideración presentada por la parte peticionaria.

I

El peticionario, Sr. Moisés Ibarra González cumple una sentencia de reclusión en una institución penal del Departamento de Corrección desde 2003 por los delitos de Asesinato en segundo grado e infracciones a la Ley de Armas de Puerto Rico. Al recurrente se le declaró delincuente habitual y se le separó permanentemente de la sociedad, conforme lo permitía el derogado Código Penal de 1974, 33 LPRA ant. sec. 3001 et seq.

Surge del expediente ante nuestra consideración que, en un caso anterior ante el Tribunal de Apelaciones (KLRA201300969), el peticionario solicitó la revisión de una Resolución emitida por el Departamento de Corrección el 17 de julio de 2013, donde se ratificó su nivel de custodia en máxima. En ese momento el tribunal apelativo intermedio dictó una Sentencia el 28 de febrero de 2014, en la que revocó la resolución recurrida y ordenó al Departamento de Corrección que realizara una nueva evaluación de custodia que no estuviera limitada a la reincidencia habitual y que

considerara el resultado negativo de la prueba de detección de sustancias controladas.

Luego de diversos trámites, el 23 de julio de 2014 el Comité de Clasificación y Tratamiento adscrito al Departamento de Corrección realizó una evaluación de custodia al recurrente, en cumplimiento con lo ordenado en la sentencia en el caso KLRA201300969. La mencionada evaluación dio paso a una Resolución Administrativa, donde se ratificó el nivel de custodia máxima. Como parte de sus conclusiones, el Comité manifestó:

> El miembro de la población correccional fue sentenciado por el Honorable Tribunal a Separación Permanente de la Sociedad. Por la naturaleza de los delitos cometidos de carácter extremo y violento (Asesinato en Segundo Grado y Ley de Armas). Ha cumplido 11 años, 9 meses y 16 días lo que consideramos no es tiempo razonable en relación a la sentencia impuesta. Restan 18 años para ser elegible a la Junta de Libertad Bajo Palabra. **En el periodo evaluado ha rehusado asistir a entrevistas con su Técnico Sociopenal demostrando no tener interés ni compromiso con su proceso de rehabilitación. Por lo que es necesario mantenerlo en custodia para seguir observando sus ajustes con máximas restricciones físicas y así garantizar la seguridad institucional y pública.**
>
> El Comité de Clasificación y Tratamiento en consideración de la necesidad de observar ajustes institucionales del confinado por un período más prolongado, acordó lo siguiente: Se ratifica custodia máxima. (Énfasis suplido).

No conforme con la determinación del Comité, el peticionario apeló ante la Oficina de Clasificación de Confinados de Nivel Central y alegó que el Departamento de Corrección no cumplió con lo dispuesto en la sentencia en el caso KLRA201300969, pues no se le reclasificó a custodia mediana; no se consideró el resultado negativo a sustancias controladas; y no se le devolvió el trabajo, a pesar de haber

"plaza disponible". Además, adujo que dicho Comité lo penalizaba al justificar la custodia máxima indicando que él no tenía compromiso con su rehabilitación por no acudir a las entrevistas de rutina con la técnico sociopenal. En ese sentido, aseveró que ningún reglamento de Corrección impone tal requisito, por lo que era ilegal que se le impusiera esa "carga adicional".

Luego, el 15 de septiembre de 2014, notificada el 10 de octubre del mismo año, la Supervisora de la Oficina de Clasificación de Confinados de Nivel Central denegó la apelación.

Inconforme, el 7 de noviembre de 2014 el peticionario presentó un recurso de revisión judicial ante el Tribunal de Apelaciones, donde impugnó su evaluación de custodia máxima. En esencia, alegó que la decisión es arbitraria, caprichosa y atenta contra el principio constitucional de rehabilitación del confinado, pues se basó exclusivamente en la extensión de la sentencia y la gravedad de los delitos. El Tribunal de Apelaciones emitió una Sentencia el 2 marzo de 2015 mediante la cual confirmó la decisión administrativa.

El 1 de mayo de 2015, el peticionario presentó la petición de _certiorari_ de epígrafe. En ella, repitió en sustancia los mismos argumentos que esbozó ante el tribunal apelativo intermedio. El 8 de julio de 215, la Sala Segunda de Despacho compuesta por la Juez Asociada señora Rodríguez Rodríguez y los Jueces Asociados señores Kolthoff Caraballo y Estrella Martínez notificó una Resolución en la que declaró no ha lugar la Petición de _Certiorari_ presentada por el

peticionario, aunque la primera hubiese expedido. El 10 de julio de 2015 el peticionario solicitó reconsideración. En el día de hoy, el Pleno del Tribunal mediante Resolución declara sin lugar la moción de reconsideración.

II

Al analizar si expedimos el recurso, este servidor tomó en consideración la norma reiterada de "que las decisiones de los foros administrativos están revestidas de una presunción de regularidad y corrección. Las conclusiones de estas agencias merecen gran deferencia por parte de los tribunales, por lo que debemos ser cuidadosos al intervenir con las determinaciones administrativas". González Segarra et al. v. CFSE, 188 DPR 252 (2013), citando a Empresas Loyola v. Com. Ciudadanos, 186 DPR 1033 (2012); Acarón et al. v. D.R.N.A., 186 DPR 564 (2012). Véase, también, Sec. 4.5 de la Ley Núm. 170 del 12 de agosto de 1988, conocida como la Ley de Procedimiento Administrativo Uniforme (LPAU), según enmendada, 3 LPRA sec. 2175.

Como hemos expresado en infinidad de ocasiones, la deferencia antes aludida tiene su fundamento en la experiencia y el conocimiento especializado que ostentan las agencias acerca de los asuntos que les son encomendados. González Segarra et al. v. CFSE, supra; Hernández, Álvarez v. Centro Unido, 168 DPR 592, 614 (2006). Al momento de revisar una decisión administrativa, el criterio rector que debe guiar a los tribunales es la razonabilidad en la actuación de la agencia. Íd. De esa forma, los tribunales analizamos las determinaciones de hechos de los organismos administrativos

amparados en esa deferencia y razonabilidad. González Segarra et al. v. CFSE, supra.

Cónsono con lo anterior, es norma reiterada que no debemos intervenir o alterar las determinaciones de hechos de un organismo administrativo si surge del expediente administrativo considerado en su totalidad que existe evidencia sustancial que sostiene dichas determinaciones. Íd.

La revisión judicial de las decisiones administrativas se debe limitar a determinar si la agencia actuó arbitraria o ilegalmente, o en forma tan irrazonable que su actuación constituye un abuso de discreción. Rebollo v. Yiyi Motors, 161 DPR 69 (2004); Fuertes y otros v. A.R.Pe., 134 DPR 947, 953 (1993).

Así pues, la deferencia cederá únicamente: (1) cuando no está basada en evidencia sustancial; (2) cuando el organismo administrativo ha errado en la aplicación de la ley, y (3) cuando ha mediado una actuación irrazonable o ilegal. González Segarra et al. v. CFSE, supra; Otero v. Toyota, 163 DPR 716, 729 (2005).

En este caso, surge del Informe que emitió el Comité de Clasificación y Tratamiento que el peticionario se negó a **asistir a entrevistas con su técnico sociopenal demostrando no tener interés ni compromiso con su proceso de rehabilitación.** Sin lugar a dudas, un confinado que se niega a asistir a entrevistas con su técnico se autolimita y coloca trabas en su proceso de rehabilitación. Como norma general, durante ese proceso de entrevistas el oficial encargado puede hacer diversas preguntas al confinado que pueden guiar al

Comité de Clasificación y Tratamiento al momento de auscultar qué nivel de custodia debe de tener un confinado. Por esa razón, la Parte IV, Núm. 9 del *Manual para Crear y Definir Funciones del Comité de Clasificación y Tratamiento en las Instituciones Correccionales*, Reglamento Núm. 7334 del 10 de abril de 2007 (Reglamento 7334), establece que las responsabilidades del técnico de servicio socio penal son:

    a. Orientar y ofrecer servicios a los confinados dependiendo de las necesidades que éstos presenten.
    b. Proveer al Comité de Clasificación y Tratamiento un resumen del delito actual del confinado, su situación social, historial delictivo y fecha de excarcelación.
    c. Proveer al Comité la puntuación obtenida en el formulario de Clasificación de Custodia.
    **d. Recomendar al Comité un plan institucional para cada confinado sentenciado.**

Si el confinado rehúsa reunirse con el técnico socio penal, es imposible que este último tenga todas las herramientas de juicio para recomendar al Comité un plan institucional, según lo exige la disposición reglamentaria antes citada. Me parece que este fundamento, que fue utilizado por el Comité de Clasificación y Tratamiento en la Resolución Administrativa, es suficiente para denegar el cambio de custodia. Al momento de dilucidar si un recluso es merecedor de un nivel de custodia menos restrictivo, es vital que la ag encia cuente con todos los elementos de juicio, no solo aquellos que surgen del formulario de clasificación de custodia.

A la luz del fundamento antes mencionado, me parece que es innecesario entrar a discutir la sabiduría o corrección de las modificaciones discrecionales que contempla el Reglamento 7334 o cómo fueron aplicadas a este caso, ya que ello

constituye *obiter dictum*. <u>Ortiz Chévere et al. v. Srio. Hacienda</u>, 186 DPR 951 (2012) <u>Ortiz v. Panel F.E.I.</u>, 155 DPR 219 (2001).

De acuerdo con las consideraciones expresadas, estoy conforme con la Resolución que emite la mayoría de este Tribunal en la que declara sin lugar la moción de reconsideración presentada por la parte peticionaria. No se demostró que el ente administrativo abusara de su discreción, por lo que procede sostener su dictamen.


                                    Edgardo Rivera García
                                       Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Moisés Ibarra González

    Peticionario

      v.                         CC-2015-339     Certiorari

Departamento de Corrección
y Rehabilitación

    Recurrido

Voto particular disidente emitido por el Juez Asociado SEÑOR ESTRELLA MARTÍNEZ al cual se une la Jueza Presidenta SEÑORA FIOL MATTA

San Juan, Puerto Rico, a 3 de noviembre de 2015.

A pesar de que un confinado obtenga en su evaluación de reclasificación de custodia una puntuación objetiva indicativa de un nivel de custodia menor, las normas reglamentarias del Departamento de Corrección y Rehabilitación (Departamento) fomentan que sus funcionarios ejerzan un nivel de discreción con criterios altamente subjetivos y arbitrarios que tienen el potencial de revocar la puntuación obtenida por el confinado, a través de sus estudios, buena conducta, ausencia de querellas y otros factores objetivos. Resulta altamente preocupante la aplicación de criterios discrecionales tan subjetivos y arbitrarios como, por ejemplo, "tener aspecto

delgado o frágil" o "ser homosexual", entre otros, para perpetuar la práctica de mantener en custodia máxima a confinados que han demostrado -con factores objetivos- que son merecedores de un nivel de custodia menor. Además, las medidas discrecionales reproducen criterios contenidos en los factores objetivos para acomodaticiamente darle un peso desproporcional a criterios ajenos a la conducta del confinado. Ello, contrario a nuestra jurisprudencia y al mandato constitucional y legislativo de rehabilitación.

En el caso ante nos, procedía revocar la determinación del Departamento al ratificar la custodia máxima del Sr. Moisés Ibarra González (señor Ibarra González o peticionario), a pesar de que en su evaluación de reclasificación de custodia recibió una puntuación objetiva indicativa de un nivel de custodia inferior. Las *modificaciones discrecionales* utilizadas por el Departamento tuvieron el efecto de lesionar el derecho fundamental del peticionario a una rehabilitación, así como imponer un peso arbitrario, caprichoso y excesivo a las características de la conducta por la cual fue sentenciado. Ello, en contraposición con el propósito de las reclasificaciones de custodia, que tienen como objetivo dar más peso a la conducta institucional del confinado.

Como situación agravante que requería nuestra intervención, en este Voto Particular Disidente podremos constatar que la realidad particular del peticionario es el *modus operandi* del Estado en lo que a reclasificaciones de

custodia se refiere, al punto que su propio perito lo ha denunciado en el caso Morales Feliciano, *infra*.

En el descargo de nuestra responsabilidad, hubiese expedido el recurso, con el fin de revocar la determinación del Departamento. Ello, por entender que es arbitraria, no se basó en evidencia sustancial y es contraria a derecho.

Expuesta la controversia, procedo a exponer los antecedentes fácticos y procesales que la suscitaron.

**I**

En el 2003, el señor Ibarra González fue sentenciado y clasificado en un nivel de custodia máxima. Han transcurrido más de 12 años desde esa fecha, y semestre tras semestre, el señor Ibarra González arroja una puntación objetiva equivalente a un nivel de custodia inferior. Sin embargo, el Departamento se ampara en los criterios subjetivos contenidos en las modificaciones discrecionales para aumentar su nivel de custodia. Con ese proceder, se neutraliza todo esfuerzo de rehabilitación ejercido por el peticionario, entre los que se encuentra que: (1) se ha integrado a los estudios ofrecidos; (2) se encuentra trabajando en el área de mantenimiento interior desde junio de 2005, devengando compensación, y (3) del informe de evaluación surge que no tiene querellas disciplinarias.

El 17 de julio de 2013, el Comité de Clasificación y Tratamiento del Departamento de Corrección (Comité) realizó otra vez más una evaluación de custodia al

peticionario. Como resultado, se ratificó el nivel de custodia máxima, a pesar de que el señor Ibarra González obtuvo una puntuación total de custodia de 5, correspondiente a un nivel inferior. Luego de los trámites administrativos correspondientes, el peticionario recurrió ante el Tribunal de Apelaciones. Mediante Sentencia del 29 de febrero de 2014, el foro intermedio revocó la resolución recurrida y ordenó al Departamento realizar una nueva evaluación de reclasificación que no se limitara a considerar que el señor Ibarra González era reincidente habitual y que, a su vez, tomara en consideración el resultado negativo de la prueba de detección de sustancias controladas. Entendió el foro apelativo que, a base de la evidencia sustancial y de lo resuelto por este Tribunal en López Borges v. Adm. Corrección, 185 DPR 603 (2012), no podía sostener la determinación de mantener al peticionario en custodia máxima, ya que la evaluación apuntaba a una clasificación de custodia mínima.

A solicitud del peticionario, el 13 de junio de 2014, el tribunal apelativo emitió una resolución mediante la cual ordenó a la Secretaría remitir al Departamento el mandato, conforme a la Sentencia dictada el 29 de febrero de 2014.[1] Finalmente, y en virtud de lo ordenado por el

---

[1] Nótese que en dicha ocasión, el Tribunal de Apelaciones apercibió al Departamento a "realizar un análisis de balance de intereses entre la política pública de lograr la rehabilitación del confinado, así como mantener la seguridad institucional, y por otro lado, el interés particular del confinado de permanecer en un determinado nivel de custodia". Además, ordenó al

Tribunal de Apelaciones, el 23 de julio de 2014, el Comité realizó una nueva evaluación de custodia al peticionario. Ese mismo día, mediante Resolución de Hecho y Derecho, el Comité volvió a ratificar la custodia máxima del señor Ibarra González. Ello, a pesar de que una vez más obtuvo una puntuación total de custodia de 5.

Inconforme, el 6 de agosto de 2014, el peticionario recurrió en apelación ante la Oficina de Clasificación de Confinados de Nivel Central. Allí, alegó que el Comité no había cumplido con lo ordenado por el tribunal apelativo. El 10 de octubre de 2014, dicha Oficina denegó la apelación, y en lo pertinente expuso:

> La naturaleza de los **delitos es de extrema gravedad y la sentencia dictada es en Grado de Reincidencia Habitual. La pena para el delito de reincidencia constituye un agravante de responsabilidad penal** en consideración a la conducta previa antisocial que ha manifestado la persona […] **tomamos conocimiento que no ha sido objeto de querellas o acciones disciplinarias.** (Énfasis suplido).

El 7 de noviembre de 2014, el señor Ibarra González recurrió nuevamente ante el Tribunal de Apelaciones mediante recurso de revisión. Alegó que la determinación del Departamento era arbitraria, caprichosa y que atentaba contra el principio constitucional de rehabilitación, toda vez que se basó en la reincidencia habitual como agravante

---

Departamento a "considerar en su determinación la 'Escala de Reclasificación de Custodia (Casos Sentenciados)', la cual arroja una PUNTUACION TOTAL DE CUSTODIA categorizada como mínima, según su propio reglamento; es decir, la evaluación del señor Ibarra González demuestra ser acreedor de un nivel de custodia menos restrictivo".

y en la gravedad de los delitos. Oportunamente, compareció la Oficina de la Procuradora General.

Un Panel distinto al que emitió la Sentencia del 29 de febrero de 2014, notificó una Sentencia el 2 de marzo de 2015. En ésta, concluyó que el Departamento, en el ejercicio de su discreción, utilizó los criterios de gravedad y reincidencia habitual para sostener el nivel de custodia máxima.[2] Ello, a pesar de reconocer que la puntuación total de la evaluación ubicaría al peticionario en un nivel de custodia menor. Además, entendió que la determinación del Departamento se basó en evidencia sustancial que surge del expediente administrativo, por lo que confirmó la resolución recurrida. El 5 de marzo de 2015, el peticionario solicitó una oportuna reconsideración y la misma fue denegada el 7 de abril de 2015.

De la anterior determinación, el 1 de mayo de 2015, el señor Ibarra González recurrió ante este Tribunal mediante recurso de *certiorari*. No obstante, mediante Resolución emitida el 5 de junio de 2015, se declaró no ha lugar el

---

[2] El Tribunal de Apelaciones señaló que, en su determinación, el Comité entendió que el tiempo cumplido por el peticionario no guardaba proporción con el término de la sentencia y la severidad de los delitos y que para garantizar la seguridad institucional y pública, era necesario ratificar la custodia máxima. Asimismo, puntualizó que el Comité había determinado que al señor Ibarra González le aplicaba la consideración especial de "custodia protectiva". Lo anterior, a pesar de reconocer que "aunque **la mencionada consideración especial no es un factor de modificación**, sí es un asunto de administración que puede afectar la vivienda del confinado o requerir supervisión especial".

mismo. Inconforme, el 10 de julio de 2015, el peticionario solicitó reconsideración de dicha determinación.

Por los fundamentos expuestos a continuación, opino que el Tribunal de Apelaciones venía llamado a revocar la determinación del Departamento. Ello, porque entiendo que el Departamento ha abusado de su discreción al reiteradamente confirmar la custodia máxima del señor Ibarra González, aun cuando existe evidencia sustancial que apunta que es merecedor de una custodia menos restrictiva.

## II

Con el propósito de fundamentar las razones que me llevan a disentir, expongo el marco estatutario y jurisprudencial aplicable. Veamos.

Sabido es que nuestro derecho administrativo reconoce que los dictámenes de los organismos administrativos merecen la mayor deferencia judicial. OCS v. Universal, 187 DPR 164, 178 (2012); The Sembler Co. v. Mun. de Carolina, 185 DPR 800, 821 (2012); Torres Santiago v. Depto. Justicia, 181 DPR 969, 1002 (2011); Vélez v. ARPe, 167 DPR 684, 693 (2006). La razón de ello es que esos procesos están cobijados por una presunción de regularidad y corrección. Torres Santiago v. Depto. Justicia, supra, pág. 1002; Vélez v. ARPe, supra, pág. 693. Ahora bien, la revisión judicial requiere determinar si la actuación de la agencia es arbitraria, ilegal o irrazonable. OEG v. Rodríguez, 159 DPR 98, 119 (2003). En ese sentido, las

conclusiones de derecho serán revisables en todos sus aspectos. *Véase* 3 LPRA sec. 2175; *véase*, además, OCS v. Universal, *supra*, pág. 178; The Sembler Co. V. Mun. de Carolina, *supra*, pág. 822.

En repetidas ocasiones, hemos expresado que la deferencia que merecen las agencias en las aplicaciones e interpretaciones de las leyes y reglamentos que administran, cede cuando no se fundamente en evidencia sustancial, cuando la agencia se equivoque en la aplicación de una ley o cuando la actuación sea arbitraria, irrazonable o ilegal.[3] OCS v. Universal, *supra*, pág. 179; The Sembler Co. v. Mun. de Carolina, *supra*, pág. 822.

## III

La Sec. 19 del Art. VI de la Constitución de Puerto Rico establece que "será política pública del Estado Libre Asociado reglamentar las instituciones penales para que sirvan sus propósitos en forma efectiva y propender, dentro de los recursos disponibles, al tratamiento adecuado de los delincuentes para hacer posible su rehabilitación moral y social". Const. ELA, LPRA, Tomo 1, ed. 1999, pág. 421. En reconocimiento a este mandato constitucional, la Asamblea Legislativa de Puerto Rico

---

[3] Para una discusión adicional en torno al tema, *véase* L. Rodríguez Rivera, *Revisión judicial y el Derecho Administrativo: Análisis crítico de la norma de deferencia judicial y comentario sobre su aplicación en el Derecho Ambiental*, 69 Rev. Jur. UPR 1153 (2000).

aprobó la *Ley de Mandato Constitucional de Rehabilitación*, Ley Núm. 377-2004, con el fin de que el sistema correccional ejecutara "programas de rehabilitación que impacten a **toda la población** sentenciada".[4] El historial legislativo de dicho estatuto demuestra que la reincidencia habitual no se consideró como una limitación para que un confinado se beneficiara del sistema de rehabilitación, incluyendo la clasificación de custodia. López Borges v. Adm. Corrección, *supra*, pág. 607.

Más tarde, con la aprobación del *Plan de Reorganización del Departamento de Corrección y Rehabilitación de 2011*, Plan 2-2011 del 21 de noviembre de 2011 (Plan de Reorganización), se derogó expresamente la Ley Núm. 377-2004. No obstante, dicho Plan mantuvo como objetivo principal implantar un procedimiento facilitador a la imposición de custodias, así como establecer programas de rehabilitación moral y social con el fin de fomentar la reincorporación de los confinados a la sociedad.[5] Así, el Plan de Reorganización reitera el deber del Departamento de realizar una "clasificación adecuada y revisar continuamente a su clientela, conforme a los ajustes y cambios de ésta".[6]

---

[4]Art. 3 de la Ley Núm. 377-2004, 4 LPRA sec. 1611. (Énfasis suplido).

[5]Art. 2 del Plan de Reorganización, 3 LPRA Ap. XVIII.

[6]Art. 5(a) del Plan de Reorganización, 3 LPRA Ap. XVIII.

En lo pertinente, dispone que "la población correccional será sometida a evaluaciones periódicas con el propósito de conocer y analizar su situación social, física, emocional y mental, historial delictivo e identificar sus capacidades, intereses, motivaciones, controles y limitaciones, a los fines de clasificarlos y determinar el plan de acción a tomar en cada caso, en armonía con los principios de tratamiento individualizado y seguridad pública enmarcados en los propósitos de este Plan".[7] Se establece, además, que en cuanto a la población de custodia máxima, dichas evaluaciones se realizarán cada seis meses.[8] Así, mientras más restrictivo el nivel de custodia, mayor la frecuencia de las evaluaciones, de modo que se analice si la conducta del confinado merece una reducción de custodia. López Borges v. Adm. Corrección, *supra*, pág. 609.

El *Manual para Crear y Definir Funciones del Comité de Clasificación y Tratamiento en las Instituciones Correccionales*, Reglamento Núm. 7334 del 10 de abril de 2007 (Manual del Comité),[9] se aprobó con el fin de crear el *Comité de Clasificación y Tratamiento* (Comité) y brindarle

---

[7] Art. 10 del Plan de Reorganización, 3 LPRA Ap. XVIII.

[8] Art. 10(b) del Plan de Reorganización, 3 LPRA Ap. XVIII.

[9] Nótese que dicho Reglamento estaba vigente a la fecha en que se emitió la Resolución impugnada (23 de julio de 2014). No obstante, fue sustituido por el *Manual para Crear y Definir Funciones del Comité de Clasificación y Tratamiento en las Instituciones Correccionales*, Reglamento Núm. 8523, vigente desde el 25 de octubre de 2014.

a dicho organismo la facultad de evaluar a los confinados.

Para realizar esta encomienda, el Comité utiliza el *Manual para la Clasificación de Confinados*, Reglamento Núm. 8281 del 30 de noviembre de 2012 (Manual de Clasificación).

El Manual de Clasificación enfatiza que el proceso de clasificación de custodia tiene que ubicar al confinado en el programa y nivel de custodia menos restrictivo posible.[10] La Sec. 7 del Manual establece lo relativo al proceso de reclasificación y resalta que el mismo "se parece a la evaluación inicial de custodia, pero recalca aún más en la conducta institucional como reflejo del comportamiento real del confinado durante su reclusión".[11] Esto es así porque si solo se evaluara la conducta por la que resultó confinado, o se le diera mayor importancia a las características de la sentencia, no tendría sentido la revisión periódica del nivel de custodia, ya que el resultado siempre sería el mismo. López Borges v. Adm. Corrección, *supra*, págs. 609-610. Lo que es más, surge expresamente de la referida sección que, "[e]s importante que los confinados que cumplan sentencias prolongadas tengan la oportunidad de obtener una reducción en niveles

_____

[10]*Véase* Manual de Clasificación, Perspectiva General, pág. 1; Manual de Clasificación, Exposición de Políticas, Sec. 1, pág. 2; Manual de Clasificación, Sec. 2(II)(A)(2), pág. 16.

[11]Manual de Clasificación, Sec. 7(II), pág. 48.

de custodia mediante el cumplimiento con los requisitos de la institución".[12]

Cónsono con lo anterior, en Cruz v. Administración, 164 DPR 341, 352 (2005), este Tribunal advirtió que:

> La determinación administrativa relativa al nivel de custodia asignado a un confinado requiere que se realice un balance de intereses adecuado. Por una parte, estará el interés público de lograr la rehabilitación del confinado, así como mantener la seguridad institucional y general del resto de la población penal; de la otra, estará el interés particular del confinado de permanecer en un determinado nivel de custodia. Además, al momento de determinarse la procedencia de un cambio en el nivel de custodia, deberá considerarse una serie de factores subjetivos y objetivos, para cuya atención se requiere la pericia de la Administración de Corrección.

Para llevar a cabo la reevaluación de custodia de los confinados sentenciados, se utiliza el *Formulario de Reclasificación de Custodia* (Formulario).[13] En éste, se le asigna una puntuación a unos factores objetivos y a otros subjetivos. A base de la puntuación total, el Departamento recomienda un nivel de custodia, a saber: máxima, mediana, mínima o mínima/comunidad.

Los criterios objetivos que se evalúan son ocho: (1) la gravedad de los cargos o sentencias actuales; (2) el historial de delitos graves previos; (3) el historial de fuga; (4) el número de acciones disciplinarias; (5) previas acciones disciplinarias serias; (6) sentencias

---

[12]Íd.

[13]Manual de Clasificación, Apéndice K.

anteriores por delitos graves; (7) participación en programas; y (8) la edad.[14]

De otra parte, el Formulario provee para que se analicen ciertas *consideraciones especiales de manejo,* unas *modificaciones no discrecionales* y unas *modificaciones discrecionales.* Estas últimas, para asignar un nivel de custodia más alto o más bajo al que indica el Manual de Clasificación, conforme a los criterios objetivos.[15]

Enfatizamos, primeramente, en las *consideraciones especiales de manejo.*[16] En lo pertinente a la controversia

---

[14]Nótese que el Manual de Clasificación expresamente dispone que los confinados que obtengan una puntuación de 7 o más en los primeros 3 renglones de esta sección, serán colocados en custodia máxima, sin tomar en consideración los demás criterios. Por ende, los renglones 4 al 8 se utilizan para otorgar una puntuación de custodia a un confinado que no es identificado inmediatamente como un riesgo de custodia máxima. Una vez se le asigna una puntuación a estos renglones, si la puntuación total es de 5 o menos, se recomienda un nivel de custodia mínima y si es de 5 o menos, pero el confiando tiene una orden de detención o arresto, se recomienda un nivel de custodia mediana. *Véase* Sec. II, Apéndice K del Manual de Clasificación.

[15]Con relación a las modificaciones discrecionales para un nivel de custodia más alto, el Manual de Clasificación establece que deben estar basadas en "documentación escrita, proveniente de reportes disciplinarios, informes de querellas, informes de libros de novedades, documentos del expediente criminal o social y cualquier otra información o documentos que evidencia ajustes o comportamiento del confinado contrario a las normas y seguridad institucional". *Véase* Manual de Clasificación, Apéndice K, Sec. III(D).

[16]Las consideraciones especiales de manejo son asuntos de administración, en términos de vivienda o supervisión especial. No son factores para modificaciones. *Véase* Manual de Clasificación, Apéndice K, Sec. III(B).

ante nuestra consideración, destacamos la *custodia protectiva*. Conforme a las instrucciones del Manual de Clasificación, "un confinado requiere custodia protectiva para garantizar su seguridad y bienestar; por ejemplo, el confinado fue o es en la actualidad miembro del personal de justicia criminal, un testigo, un informante reconocido o un homosexual, o tienen enemigos conocidos en la institución, aspecto delgado o frágil, una barrera de idioma irremediable o ha sido acusado de delito(s) [sic] atroz(ces) o notorio(s)".

Las *modificaciones no discrecionales* son dos: (1) deportación; y (2) tiempo para cualificar para libertad bajo palabra.[17] En cuanto a la primera, si el confinado tiene, o probablemente tendrá, una orden de deportación, se deberá destinar a una institución donde el nivel de custodia no sea menor de mediana. Por su parte, si al confinado le restan más de 15 años para cualificar para libertad bajo palabra, deberá ser designado a una institución de seguridad mediana.

En cuanto a las *modificaciones discrecionales* para un **nivel de custodia más alto**, señalamos las siguientes, por tener especial pertinencia al caso de autos:

> Gravedad del delito: La puntuación subestima la gravedad del delito. El personal debe documentar las características del delito que aparecen en la declaración de los hechos que se están

---

[17]Las modificaciones no discrecionales son **"requisitos obligatorios** de necesidad de vivienda especial". *Véase* Manual de Clasificación, Apéndice K, Sec. III(C). (Énfasis suplido).

utilizando como fundamento para la decisión de la modificación.

Los confinados cuyas circunstancias del delito y sus consecuencias hayan creado una situación de tensión en la comunidad, revistiéndose el caso de notoriedad pública y la comunidad se siente amenazada con su presencia.

Que el Tribunal haya sentenciado al confinado a cumplir sentencia mediante Reincidencia Agravada.

. . . . . . . .

Grados de Reincidencia: Se podrán considerar aquellos confinados que han sido sentenciados con Reincidencia Agravada o Habitual por un Tribunal. También podrán incluirse los Declarados Delincuentes Habituales y Separados Permanentemente de la Sociedad.

La pena para el delito en grado de reincidencia constituye un agravante de responsabilidad penal en consideración con la conducta previa antisocial que ha manifestado la persona. Esta medida garantiza la protección de la sociedad y la prevención de la delincuencia mientras produce la rehabilitación moral y social del confinado.

Con relación a lo anterior, en Cruz v. Administración, *supra*, págs. 358-359, este Tribunal entendió que la gravedad del delito no puede ser el único factor para ratificar la custodia de un confinado. Por su parte, en López Borges v. Adm. Corrección, *supra*, págs. 613-616, se determinó que el criterio de reincidencia habitual fue eliminado de nuestro ordenamiento, por lo que los confinados que a su vez sean reincidentes habituales, no están excluidos del proceso de reclasificación y, por ende, no se les puede privar de su derecho constitucional a la rehabilitación.

Por su parte, en cuanto a las modificaciones discrecionales para un **nivel de custodia más bajo**, destacamos la siguiente:

> Conducta Excelente: El confinado ha demostrado un historial excelente de conducta institucional que justifica que se coloque en un nivel de custodia más bajo.
>
> Que su comportamiento observable evidencien [sic] que ha ganado sentido de responsabilidad, que ha habido crecimiento personal, que ha demostrado interés por los programas de tratamientos y ha sacado provecho de estos y se ha trazado unas metas reales claramente definidas para reintegrarse a la comunidad como ciudadano útil.
>
> Que del historial y de la evaluación ponderada del caso, se desprende que el confinado no representa amenaza para la población correccional, empleados del Sistema o para la comunidad.
>
> Que luego de un análisis ponderado se perfile como buen candidato para recibir tratamiento en programas de comunidad y participar en actividades en la misma.
>
> Que por lo menos en un año previo a su consideración para cambio de custodia, el confinado no haya sido declarado incurso en una vista administrativa por la comisión de una ofensa Nivel I o Nivel II conforme se establecen estas en el Reglamento de Procedimientos Disciplinarios para Confinados y Participantes de Programas de Desvío y Comunitarios.
>
> Que su historial social y delictivo no revele un riesgo de fuga, más allá del que representa todo confinado.
>
> Que el confinado acepte y observe las normas institucionales.

**A.**

En octubre de 2013, según ordenado por el Tribunal Federal de Distrito para el Distrito de Puerto Rico, en el caso <u>Morales Feliciano et al. v. Estado Libre Asociado de</u>

Puerto Rico, Civil Núm. 79-4 (PJB-LM), el perito del

Estado James Austin sometió el informe intitulado

*Commonweath of Puerto Rico Administration of Corrections*

*Implementation and Validation of the Inmate Classification*

*System* (Informe Pericial).[18] En el mismo, resumió el estado

del sistema de clasificación de custodia del Departamento

para ese entonces y concluyó, primeramente, que la

ausencia de suficiente personal que atienda el

procedimiento de clasificación, así como la falta de un

sistema automatizado, afecta directamente la clasificación

errónea de custodia.[19]

En cuanto al proceso de clasificación, determinó que,

con excepción de los confinados de máxima custodia, se

estaba clasificando a los confinados en los niveles de

custodia apropiados. ("[T]he current classification system

(with the exception of the maximum custody inmates as

discussed below) is assigning inmates to appropriate

custody levels").[20] Específicamente, estableció:

> For the reclassification system, there is an
> inappropriate use of over-rides as staff are
> using the severity of the offense as a reason to
> increase the custody level from medium to
> maximum. This is being used for inmates with
> lengthy sentence (99 years or more) and/or when
> the nature of the crime is so severe or violent
> in nature that all factors associated with the

---

[18]*Véase* Anejo XII del recurso, págs. 83-102.

[19]En específico, señaló que en ese momento el Departamento solo contaba con un supervisor y cuatro técnicos socio-penales, que en el año 2012 revisaron 43,000 evaluaciones de clasificación. *Véase* Anejo XII del recurso, pág. 84.

[20]*Véase* Anejo XII del recurso, pág. 85.

> inmate's prior and institutional conduct are insufficient to assign the inmate maximum custody.
>
> . . . . . . . .
>
> This excessive use of the over-ride is also contributing to an excessive number of maximum custody inmates, which exceeds the number of maximum security beds.[21]

Finalmente, el perito concluyó que el uso de las *modificaciones discrecionales* ("over-rides") en las evaluaciones de confinados con sentencias de 99 años o más, es excesivo. Por ende, recomendó añadir una *modificación no discrecional* ("mandatory over-ride") que permita que confinados con sentencias de 99 años o más, que tengan puntuaciones equivalentes a custodia mediana o mínima, sean asignados a custodia mediana luego de haber estado en custodia máxima por cinco años.[22]

Al amparo de lo anterior, expongo mi discernimiento en torno a la controversia de epígrafe.

**IV**

Mediante Sentencia del 29 de febrero de 2014, el Tribunal de Apelaciones revocó la determinación del Comité de ratificar la custodia máxima del peticionario y ordenó al Departamento a "realizar una nueva evaluación de reclasificación que no esté limitada a la reincidencia habitual, y que considere el resultado negativo de la

---

[21]Íd., págs. 99-100.

[22]Íd., pág. 101.

prueba de detección de sustancias controladas".[23] No obstante lo anterior, el 23 de julio de 2014, el Comité volvió a ratificar la custodia máxima del peticionario utilizando nuevamente las *modificaciones discrecionales* para aumentar su custodia. La determinación del Comité descansó en lo siguiente: (1) medida de tratamiento; (2) naturaleza de los delitos de carácter extremo y violento; (3) sentenciado a separación permanente; (4) tiempo cumplido no es razonable en relación a la sentencia; (5) tiempo que resta para ser elegido a la Junta de Libertad Bajo Palabra; y (6) que el peticionario no había demostrado interés en su proceso de rehabilitación.

Como mencioné en el acápite II, la *modificación discrecional* para aumentar el nivel de custodia basado en la gravedad del delito solo debe utilizarse cuando la puntuación de la evaluación subestima la gravedad del delito, cuando las circunstancias del delito cometido hayan creado una situación de tensión, cuando la comunidad se siente amenazada con la presencia del confinado o cuando el confinado haya sido sentenciado por reincidencia agravada. No existe evidencia sustancial en el expediente que justifique modificar discrecionalmente la custodia del peticionario utilizando como fundamento la gravedad del delito. Primeramente, si bien es cierto que el delito de asesinato en segundo grado es clasificado como de severidad extrema, los delitos relacionados con la Ley de

---

[23]Sentencia del Tribunal de Apelaciones del 29 de febrero de 2014 en el caso KLRA2013-00969, pág. 21.

Armas del 2000, 25 LPRA sec. 455 *et seq.*, por los que fue sentenciado el señor Ibarra González, son clasificados como de severidad alta y moderada.[24] Por ende, considero que el criterio de gravedad del delito no solo se utilizó como factor objetivo en la evaluación del señor Ibarra González, sino que también se utilizó, de manera arbitraria, como criterio subjetivo para denegarle a éste una custodia menos restrictiva. Tal razonamiento no obviaría la cruda realidad expuesta por el propio perito del Departamento, quien, luego de su análisis, concluyó que el uso de *modificaciones discrecionales* para aumentar los niveles de custodia a los confinados sentenciados a 99 años o más –como es el caso del peticionario– es excesivo.

Además, estoy en desacuerdo con que el Comité haya modificado discrecionalmente el nivel de custodia que objetivamente le corresponde al peticionario, fundamentándose en que fue sentenciado a separación permanente de la sociedad, por ser reincidente habitual en virtud del Art. 62 del derogado Código Penal de 1974. A la luz de la normativa jurisprudencial expuesta, es forzoso concluir que a pesar de que la Ley Núm. 377-2004 fue derogada por el Plan de Reorganización, éste conservó la política pública que se había declarado en aquella, a los fines de que nuestro sistema correccional propicie la rehabilitación de *todos* los confinados, sin excluir a los reincidentes habituales. De igual forma, la omisión del

---

[24]*Véase* Manual de Clasificación, Apéndices E y K.

Comité de justificar las referidas modificaciones discrecionales a través de documentación escrita, reportes disciplinarios o informes de querellas es, sin más, una violación a su propia reglamentación.[25]

Lo anterior me lleva a concluir que la asignación del señor Ibarra González a una custodia protectiva también fue un proceder arbitrario e irrazonable del Comité. No surge del expediente evidencia sustancial que justifique que el peticionario debe ser asignado a una custodia protectiva, conforme a las instrucciones del Manual de Clasificación en torno a dicha medida administrativa. Tampoco el Comité justificó tal determinación. No obstante, aun si existiera dicha evidencia, el peticionario demostró que existen instituciones correccionales de custodia mediana y mínima que albergan confinados de custodia protectiva.

Por otro lado, es preciso señalar que el tiempo cumplido en relación a la sentencia no forma parte de las modificaciones discrecionales para aumentar custodia. Soy de la opinión que utilizar discrecionalmente tal hecho como fundamento para aumentar la custodia, descansa indirectamente en la gravedad del delito, por lo que creó una carga excesiva a un factor que bastaba con ser evaluado mediante la escala objetiva.

No debemos obviar lo que sí surge diáfanamente del expediente, a saber: que el señor Ibarra González "cursó

_____

[25]Manual de Clasificación, Apéndice K, Sec. III(D).

hasta el noveno grado; se ha integrado a los estudios ofrecidos; y su trabajo académico se califica de regular. Además, estaba asignado a trabajar en el área de mantenimiento interior desde junio de 2005 devengando compensación, sin derecho a bonificación. Por último, surge del Informe que no tiene querellas disciplinarias".[26] Lo que es más, de un examen de las evaluaciones de reclasificación de custodia en el expediente, se desprende que el peticionario ha obtenido una puntuación total de custodia de 5, que lo coloca en un nivel de custodia inferior, si no fuese porque dicho nivel fue aumentado a través de las modificaciones discrecionales.

Ante esa realidad, este Tribunal debió expedir el recurso para revisar y revocar el dictamen emitido por el Departamento y expresarnos en torno a la arbitrariedad y utilización desproporcional de las *modificaciones discrecionales* para aumentar el nivel de custodia. Prueba de ello es el caso ante nuestra consideración, en el cual a pesar de haberse demostrado que el señor Ibarra González es acreedor de un nivel de custodia menor en virtud de unos criterios objetivos, constantemente se le ha denegado dicha reducción. Ello, porque a pesar de que el proceso de reclasificación debe recalcar "la conducta institucional como reflejo del comportamiento real del confinado", la evaluación para reclasificación de custodia del señor Ibarra González que resultó en la determinación aquí

_____

[26]Sentencia del Tribunal de Apelaciones del 29 de febrero de 2014 en el caso KLRA2013-00969, pág. 19.

recurrida, contempla, como *modificaciones discrecionales*, las características relacionadas a la conducta por la cual fue sentenciado, más omite considerar su conducta institucional. Ciertamente, dicha actuación no promueve el mandato constitucional que le impone al Departamento el deber de fomentar la rehabilitación del peticionario.

Por ende, entiendo que la deferencia que de ordinario se le concede a las agencias administrativas debió ceder en el caso de autos. Sin duda, éste ameritaba nuestra intervención ya que: (1) la determinación del Departamento no se basó en evidencia sustancial que surge del expediente; (2) el Departamento erró en la aplicación de sus propios reglamentos; (3) la constante ratificación de custodia máxima es, sin duda, arbitraria e irrazonable, y (4) dicha ratificación de custodia lesiona el derecho constitucional a la rehabilitación del peticionario.

## V

Conforme a los fundamentos que anteceden, expediría el recurso de *certiorari* con el fin de revocar el dictamen emitido por el Tribunal de Apelaciones y, a su vez, revocar la determinación del Departamento en torno a la ratificación de custodia máxima del señor Ibarra González.

Luis F. Estrella Martínez
Juez Asociado