EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Geovanny Ortiz Pérez<br><br>Peticionario<br><br>v.<br><br>Departamento de Corrección y Rehabilitación<br><br>Recurrido | Certiorari<br><br>2021 TSPR 70<br><br>206 DPR ____ |

Número del Caso: CC-2021-63

Fecha: 21 de mayo de 2021

Abogado de la parte peticionaria:

    Por derecho propio

Tribunal de Apelaciones:

    Panel I

Materia: Resolución del Tribunal con Voto particular de conformidad y Votos particulares disidentes.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Geovanny Ortiz Pérez

    Peticionario

       v.               CC-2021-0063    *Certiorari*

Departamento de Corrección y Rehabilitación

    Recurrido

RESOLUCIÓN

En San Juan, Puerto Rico, a 21 de mayo de 2021.

    Atendida la *Petición de certiorari* que presentó el peticionario, se provee no ha lugar.

    Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Martínez Torres está conforme y emite un Voto particular de conformidad al que se unen la Jueza Asociada señora Pabón Charneco y los Jueces Asociados señores Rivera García y Feliberti Cintrón. La Jueza Presidenta Oronoz Rodríguez expediría para revocar y emite un Voto particular disidente al que se une el Juez Asociado señor Estrella Martínez. El Juez Asociado señor Colón Pérez expediría para revocar y emite un Voto particular disidente al que se une el Juez Asociado señor Estrella Martínez. El Juez Asociado señor Estrella Martínez expediría para revocar.

                        José Ignacio Campos Pérez
                    Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Geovanny Ortiz Pérez

    Peticionario

       v.

                           CC-2021-0063

Departamento de Corrección
y Rehabilitación

    Recurrido

Voto particular de conformidad emitido por el Juez Asociado señor MARTÍNEZ TORRES al cual se unieron la Jueza Asociada señora PABÓN CHARNECO, el Juez Asociado señor RIVERA GARCÍA y el Juez Asociado señor FELIBERTI CINTRÓN

En San Juan, Puerto Rico, a 21 de mayo de 2021.

No debemos sustituir el criterio del Departamento de Corrección y Rehabilitación. La clasificación del nivel de custodia mediana en este caso fue razonable, cumplió con el procedimiento establecido en los reglamentos y manuales y no alteró los términos de la sentencia del recluso.

I

El Sr. Geovanny Ortiz Pérez cumple una condena de 125 años en cárcel ya que cometió los delitos de asesinato en primer grado, uso de disfraz, conspiración e infracciones a la Ley de Armas de Puerto Rico y la Ley de Sustancias Controladas. Como parte de la

Ley de Sustancias Controladas. Como parte de la evaluación que se hace cada 12 meses del plan correccional del señor Ortiz Pérez, el Comité de Clasificación y Tratamiento (Comité) del Departamento de Corrección y Rehabilitación (Departamento de Corrección) decidió ratificar el nivel de su custodia en una mediana. Para esto, el Comité aplicó el criterio reglamentario que establece que corresponde clasificar en una institución de custodia mediana al recluso que le faltan más de 15 años de reclusión para ser considerado por la Junta de Libertad Bajo Palabra (Junta).

Tras varios trámites procesales, el señor Ortiz Pérez presentó un recurso de revisión en el Tribunal de Apelaciones en el que alegó que el Departamento de Corrección no podía aplicarle la reglamentación que utilizó debido a que fue aprobada luego de la comisión de los delitos por los que se encuentra recluido. Arguyó que su aplicación violaría la prohibición constitucional contra las leyes *ex post facto*. También, señaló que demostró su rehabilitación y que si se le aplica la reglamentación en controversia nunca sería elegible para un nivel de custodia menor.

Ante esto, el foro apelativo intermedio confirmó la determinación administrativa. En síntesis, concluyó que el Departamento de Corrección actuó válida y correctamente ya que la aplicación reglamentaria no está vedada por la cláusula constitucional contra las leyes *ex post facto*.

Inconforme, el señor Ortiz Pérez nos solicita la revisión de la Sentencia del Tribunal de Apelaciones.

II

En primer lugar, el Departamento de Corrección y Rehabilitación merece particular deferencia en lo concerniente al proceso de clasificación de los confinados. Cruz v. Administración, 164 DPR 341, 355 (2005). Para esto, debe realizar un balance de intereses entre el mandato constitucional al tratamiento adecuado de los confinados que haga posible su rehabilitación y la seguridad de la población y el personal correccional. Art. VI, Sec. 19, Const. ELA, LPRA, Tomo 1. Además, el Departamento de Corrección tiene el poder expreso para adoptar reglamentación que establezca guías adecuadas que eviten actuaciones arbitrarias e injustas. Báez Diaz v. ELA, 179 DPR 605, 619 (2012). Véase, Plan de Reorganización del Departamento de Corrección y Rehabilitación de 2011, Plan de Reorganización Núm. 2-2011, 3 LPRA Ap. XVIII.

De hecho, ya que cuenta con la experiencia y pericia para realizar este tipo de evaluaciones sus determinaciones gozan de una presunción de legalidad y corrección. Super Asphalt v. AFI y otros, 2021 TSPR 45, 206 DPR __ (2021); Capó Cruz v. Jta. Planificación et al., 204 DPR 581 (2020). Como consecuencia, las determinaciones administrativas deben sostenerse por los tribunales siempre que no sean arbitrarias o caprichosas. Román Ortiz v. OGPe, 203 DPR 947, 956 (2020).

Específicamente, debemos aplicar la ponderada norma de que, debemos confirmar **una decisión de clasificación de custodia si es razonable y cumple con el procedimiento de las**

**reglas y manuales sin alterar los términos de la sentencia impuesta.** Cruz v. Administración, supra, pág. 355.

La controversia de autos gira en torno a la aplicación de un **criterio obligatorio** que limita la discreción del Comité en la evaluación del nivel de custodia del señor Ortiz Pérez. El Comité actuó de manera razonable al aplicar el criterio reglamentario que limita su discreción en una norma de aplicación general a todos los confinados. Su actuación está lejos de ser arbitraria o caprichosa.

Por otra parte, queda claro que los reglamentos que utiliza el Departamento de Corrección para la clasificación de los confinados no son leyes penales. Asimismo, hemos reiterado que

> [s]on cuatro los tipos de estatutos que consideramos ex post facto: (1) aquellas leyes que criminalizan y castigan un acto que, al ser realizado, no era delito; (2) las que agravan un delito o lo hacen mayor de lo que era al momento de ser cometido; (3) las que alteran el castigo imponiendo una pena mayor que la fijada para el delito al momento de ser cometido, y (4) las que alteran las reglas de evidencia, exigiendo menos prueba que la requerida por la ley al momento de la comisión del delito para castigar al acusado o reducir el quantum de evidencia necesario para encontrarlo culpable. Pueblo v. Ferrer Maldonado, 201 DPR 974, 990 (2019)

En este caso no cabe hablar de la protección constitucional contra leyes *ex post facto*. Además, al evaluar conjuntamente la gama de criterios involucrados vemos que la actuación del Comité resulta compatible con los principios de rehabilitación y seguridad. En estas circunstancias, no debemos intervenir con la determinación del Departamento de Corrección pues es razonable, cumple con el procedimiento

establecido en los reglamentos y manuales y no altera los términos de la sentencia del recluso.

En mi Opinión disidente en <u>López Borges v. Adm. Corrección</u>, 185 DPR 603, 635 (2012), advertí del peligro de adoptar posturas que sentarían las bases para eventualmente declarar inconstitucional la custodia máxima. Hoy los votos disidentes sientan las bases para hacer lo mismo con la custodia mediana. Afortunadamente esta vez no tuvieron éxito porque a ese ritmo, la cárcel sería inconstitucional.

                                III

En fin, estoy convencido de que la prudencia aconseja denegar la expedición del recurso.


                        RAFAEL L. MARTÍNEZ TORRES
                            Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Geovanny Ortiz Pérez

     Peticionario

       v.

Departamento de Corrección y       CC-2021-0063
Rehabilitación

     Recurrido

La Jueza Presidenta ORONOZ RODRÍGUEZ emite un Voto Particular disidente al cual se une el Juez Asociado señor ESTRELLA MARTÍNEZ.

En San Juan, Puerto Rico, a 21 de mayo de 2021.

Pudimos y debimos evaluar la validez y aplicación de un criterio no discrecional que el Departamento de Corrección y Rehabilitación (Corrección) impone a la población correccional para evaluar la reclasificación de custodia. El que resten 15 años para que la Junta de Libertad Bajo Palabra (Junta) considere otorgar el beneficio de libertad a prueba, no debe detonar la activación automática de una modificación no discrecional por parte del Comité de Clasificación y Tratamiento (Comité). Ello da la espalda al progreso y a los logros que puede alcanzar una persona confinada en su rehabilitación y, además, burla el cómputo matemático cuyo resultado asigna un

nivel más bajo en la escala de clasificación.

El procedimiento de reclasificación se rige por el *Manual de Clasificación de Confinados* (Manual) que promulga el Departamento de Corrección. Este Manual se ha enmendado en ocasiones diversas a través de los años. Su historial demuestra que, por lo menos, en cuanto a las modificaciones no discrecionales, el Estado es cada vez más restrictivo con sus medidas. El efecto es que se ignora el fin rehabilitador de nuestro sistema penal y el orden constitucional que rige.

Ante ello, debimos expedir el recurso. Había que evaluar si reclasificar a una persona en custodia mediana a base de la modificación no discrecional de que a la persona le restan más de 15 años para ser considerada por la Junta de Libertad Bajo Palabra es contrario a la política pública de rehabilitación social y moral que consagra nuestra Constitución. Estoy convencida que la custodia, si bien no afecta el número de años de prisión, incide sobre las libertades y los beneficios de las personas confinadas. En vista de que una Mayoría acordó no atender esta controversia, disiento.

**I**

Los documentos revelan que, el 3 de noviembre de 2000, al Sr. Geovanny Ortiz Pérez se le sentenció a cumplir 152 años de cárcel por los delitos de asesinato en primer grado, uso de disfraz, conspiración, e

infracciones a la <u>Ley de Armas de Puerto Rico</u> y la <u>Ley de Sustancias Controladas</u>.

El 28 de septiembre de 2020 el Comité se reunió para evaluar el plan institucional del señor Ortiz Pérez. Llevó a cabo una reclasificación de custodia rutinaria. En ese momento el peticionario estaba clasificado en custodia mediana.

Surge de los acuerdos del Comité que, por la gravedad de los cargos y su sentencia, el peticionario acumuló seis (6) puntos en la escala de evaluación de custodia.[1] No obstante, se le restaron cuatro (4) puntos por su participación en programas o tratamiento y por su edad.[2] Ello resultó en una puntuación total de custodia de dos (2) puntos lo que, según los niveles de la escala, --y la matemática ineludible-- correspondía a un nivel de custodia mínima.[3]

Ahora bien, el Comité ratificó al señor Ortiz Pérez en custodia mediana en base a una modificación no discrecional. Esta establece que corresponde clasificar en una institución de custodia mediana a la persona que le resta por cumplir más de 15 años de reclusión para ser considerado por la Junta. A esos efectos, el Comité resaltó que el señor Ortiz Pérez "posee mínimo de sentencia a 24 años por cumplir".

---

[1] Ap. del *certiorari*, anejo 4.
[2] Id.
[3] Id.

Inconforme, el peticionario presentó un recurso de reconsideración de su clasificación de custodia.[4] La Supervisora de Clasificación denegó la solicitud y expresó que:

> Se concurre con la determinación del [Comité]. Cumple 152 años de prisión por delitos de Asesinato en Primer Grado, Infracción a los Artículos 6 y 8 de la Ley de Armas, Uso de Disfraz, Conspiración e Infracción al Artículo 404 de la Ley de Sustancias Controladas. El Manual Para la Clasificación de Confinados #9151 establece como una Modificación No Discrecional, el que confinados que le resten más de 15 años para ser elegibles para Libertad Bajo Palabra, serán ubicados en custodia mediana. El mínimo de su sentencia est[á] para el 29 de junio de 2044 y la fecha prevista de excarcelación es el 11 de diciembre de 2131.

En desacuerdo, el peticionario recurrió al Tribunal de Apelaciones. En esencia, argumentó que la reglamentación en la cual el Comité descansó para ratificar su custodia mediana no aplica pues se aprobó luego de que se le sentenciara por los delitos a base de los cuales está recluido. Arguyó que su aplicación violaría la prohibición constitucional contra leyes *ex post facto*. Sostuvo, además, que su puntuación en la escala corresponde a custodia mínima, y que no se le puede aplicar la reglamentación citada, porque nunca sería elegible para un nivel de custodia menor. En apoyo de su contención argumentó que él ha demostrado una completa rehabilitación.

---

[4] Id., anejo 5.

Luego de examinar el asunto, el foro intermedio confirmó la determinación de Corrección. Expresó que las disposiciones constitucionales sobre leyes *ex post facto* no impiden la aplicación del *Manual para la Clasificación de Confinados*, Reglamento Núm. 9151 del Departamento de Corrección y Rehabilitación de 22 de enero de 2020 (Reglamento Núm. 9151). Explicó que el reglamento no impone una pena mayor a la que se fijó cuando se cometió el delito. Aclaró que tampoco alarga el término de reclusión que se debe cumplir, como sucedería si se eliminara la elegibilidad para la concesión de libertad bajo palabra o bajo supervisión electrónica. Así, el Tribunal de Apelaciones resaltó que no le compete pasar juicio sobre la política pública que estableció Corrección, independiente de si una persona puede estar décadas sin ser elegible, o nunca advenir elegible, para que se le considere para custodia mínima. Entiéndase, irrespectivo de si la persona confinada tiene una conducta ejemplar y se esfuerza en su rehabilitación, podrían transcurrir años, incluso décadas, sin que la persona sea acreedora de una modificación del nivel de custodia.

Insatisfecho, el señor Ortiz Pérez señaló, en esencia, que el Tribunal de Apelaciones erró al permitir que se establezca su custodia a base de un reglamento más oneroso que el que estaba vigente al momento de ser sentenciado. Arguyó que esa determinación viola su

derecho constitucional a rehabilitarse. Veamos el marco jurídico aplicable.

## II

La Sección 19 del Artículo VI de la Constitución del Estado Libre Asociado de Puerto Rico dispone que "[s]erá política pública del Estado […] reglamentar las instituciones penales para que sirvan sus propósitos en forma efectiva y propender, dentro de los recursos disponibles, el tratamiento adecuado de los delincuentes **para hacer posible su rehabilitación moral y social**". (Énfasis suplido). En cumplimiento con ese mandato, se creó una Administración de Corrección "con los poderes y con la flexibilidad necesaria para maximizar la probabilidad de rehabilitación del delincuente, y para viabilizar su pronta reintegración al núcleo familiar y a la comunidad como ciudadano productivo y respetuoso de la ley".[5]

Igualmente, el Art. 2 del Plan de Reorganización Núm. 2 del Departamento de Corrección, vigente actualmente, decretó como política pública del Gobierno de Puerto Rico "[l]a creación de un sistema integrado de seguridad y administración correccional […] que establezc[a] procesos de rehabilitación moral y social del miembro de la población correccional o transgresor,

---

[5] Exposición de Motivos de la Ley Orgánica de la Administración de Corrección, Ley Núm. 116 de 22 de julio de 1974, según enmendada, 4 LPRA sec. 1101 *et seq.* (derogada).

a fin de fomentar su reincorporación a la sociedad".[6] A tono con esa política pública, se estableció entre las funciones, facultades y deberes de la agencia clasificar adecuadamente a las personas bajo su custodia y revisar continuamente esa clasificación.[7] Además, integrar y dar participación a las personas y sus familiares en el "diseño, implantación y evaluación periódica de los sistemas de clasificación y de los programas de rehabilitación".[8] No cabe duda de que el sistema penal y correccional de Puerto Rico procura un fin rehabilitador cuyo fin es que la persona transgresora se reincorpore, eventualmente, en la sociedad.

Conforme al deber de clasificar adecuadamente a las personas bajo la custodia del Estado, el Art. 10 del Plan de Reorganización Núm. 2 dispone que:

> **La población correccional será sometida a evaluaciones periódicas** con el propósito de conocer y analizar su situación social, física, emocional y mental, historial delictivo e identificar sus capacidades, intereses, motivaciones, controles y limitaciones, **a los fines de clasificarlos** y determinar el plan de acción a tomar en cada caso, **en armonía con los principios de tratamiento individualizado y seguridad pública enmarcados en los propósitos de este Plan**. (Énfasis suplido). 3 LPRA Ap. XVIII.

En cumplimiento con la ley, Corrección promulgó el *Manual de Clasificación de Confinados* con el propósito

---

[6] 3 LPRA Ap. XVIII.
[7] Art. 5 del Plan de Reorganización Núm. 2 de 2011, 3 LPRA Ap. XVIII.
[8] Id.

de establecer un sistema organizado para asignar a la
población correccional en instituciones y programas de
adultos. Este manual se ha cambiado en varias ocasiones,
sin embargo, ha reiterado consistentemente que "[p]ara
lograr un sistema de custodia funcional, el proceso
tiene que ubicar a cada confinado en el programa **y en
el nivel de custodia menos restrictivo posible para el
que el confinado cualifique** […]".[9] Además, resalta que
"[l]a meta del Sistema Correccional es clasificar
objetivamente a todos los confinados y asignar recursos
suficientes para que todos los confinados puedan ser
miembros productivos de la sociedad".[10]

Tanto el Plan de Reorganización Núm. 2 como el
Manual de Clasificación disponen que el nivel de
custodia para los confinados de custodia mínima y
mediana se revisará cada 12 meses.[11] Para realizar esa
reclasificación, el Comité debe usar el *Formulario de
Reclasificación de Custodia* -también conocido como
*Escala de Reclasificación de Custodia*— que consta en el
Apéndice K del manual.[12] Este detalla los criterios que
hay que considerar para realizar la evaluación, entre

---

[9] Véase Introducción del *Manual para la Clasificación de los Confinados*, Reglamentos Núm. 6067 y 9151 del Departamento de Corrección y Rehabilitación, respectivamente. (Énfasis suplido).
[10] Id.
[11] Art. 10 del Plan de Reorganización Núm. 2 de 2011, 3 LPRA Ap. XVIII; Depto. Corrección, *Manual para la Clasificación de los Confinados*, Reglamento Núm. 9151, Sección 7(III) (22 de enero de 2020), http://app.estado.gobierno.pr/ReglamentosOnLine/Reglamentos/9151.pdf.
[12] Depto. Corrección, Reglamento Núm. 9151, Apéndice K.

los cuales están: la gravedad de los cargos y las sentencias actuales, el historial de delitos graves previos, el historial o tentativa de fuga, el número de acciones disciplinarias, las acciones disciplinarias serias, las sentencias anteriores por delitos graves, la participación en programas y la edad actual.[13]

Además, el manual establece unas modificaciones que cataloga como discrecionales y no discrecionales. Una modificación discrecional es un "facto[r] específico de clasificación que el personal puede usar para modificar la clasificación de un confinado, pero solamente con la aprobación del supervisor de clasificación".[14] Por su parte, aunque el manual no define las modificaciones no discrecionales, se trata de factores que sirven para modificar la clasificación de un confinado a los que el manual les impone carácter imperativo. La persona que califica no tiene discreción en cuanto a su aplicación, sino que está obligada a marcar cualesquiera de los criterios de esa sección con los que cumpla el confinado.[15]

En lo pertinente, el Reglamento Núm. 6067 de 23 de diciembre de 1999 (Reglamento Núm. 6067), vigente cuando sentenciaron al señor Ortiz Pérez, contenía un formulario de escala de clasificación que establecía

---

[13] Id.
[14] Id., pág. 8.
[15] Id., Apéndice K.

únicamente dos medidas no discrecionales para reclasificar la custodia de un confinado: (1) comportamiento sexual agresivo; y (2) orden de deportación.[16] Por otro lado, el Reglamento Núm. 6067 consideraba como medida discrecional para un nivel de custodia más alto si al confinado le restaban más de 5 años para ser referido a la Junta. Nótese que la medida relacionada a la libertad bajo palabra del confinado era discrecional y podía aplicársele a la persona hasta 5 años antes que esta pudiera ser considerada por la Junta.

Ahora bien, a tenor con el Plan de Reorganización Núm. 2, Corrección promulgó el Reglamento Núm. 8281 de 30 de noviembre de 2012 (Reglamento Núm. 8281) el cual reformuló el *Manual para la Clasificación de los Confinados*. Esta versión del manual alteró tanto las modificaciones discrecionales como las no discrecionales. A partir de ese momento, se estableció como modificación no discrecional que, si al confinado le restan por cumplir más de 15 años para ser considerado por la Junta, "[s]e deberá ubicar en una institución de seguridad mediana".[17]

---

[16] Valga recordar que <u>López Borges v. Adm. de Corrección</u>, 185 DPR 603 (2012) eliminó la reincidencia habitual como impedimento para una reclasificación de custodia a mínima.

[17] Depto. Corrección, *Manual para la Clasificación de Confinados*, Reglamento Núm. 8281, Apéndice K, Sección III (C) (30 de noviembre de 2012), <u>http://app.estado.gobierno.pr/ReglamentosOnLine/Reglamentos/8281.pdf</u>.

Posteriormente, el Reglamento Núm. 9033 de 18 de junio de 2018, enmendó el manual y esa enmienda incluyó cambios al formulario de reclasificación de custodia. En lo pertinente, se modificó el texto de la Sección III del Apéndice K a los efectos de disponer como modificación no discrecional que al confinado que le restan por cumplir más de 15 años para ser considerado por la Junta, se deberá ubicar en una institución de <u>custodia</u> mediana.

Recientemente en el año 2020, se promulgó el Reglamento Núm. 9151 el cual adoptó el mismo texto de la enmienda anterior. No obstante, se estableció una excepción a la norma general que clasifica en custodia mediana a la persona que le aplica el criterio. Actualmente, la modificación no discrecional lee como sigue.

> **Más de quince años para ser elegible a libertad bajo palabra**: al confinado que le resta por cumplir más de quince años para ser considerado por la Junta de Libertad Bajo Palabra, se deberá ubicar en una institución de custodia mediana.
>
> A modo de excepción, aquel confinado que haya cumplido diez (10) años clasificado en custodia mediana, de manera ininterrumpida y que cumpla con el plan institucional asignado, sin incurrir en informes o evaluaciones negativas, sin incurrir en resultados positivos en pruebas toxicológicas rápidas o realizadas por el Instituto de Ciencias Forense o en positivo administrativo y que demuestre cambios positivos durante en confinamiento, podrá ser clasificado en custodia mínima. Si el confinado, luego de ser reclasificado en custodia mínima, incurre en algún acto o incumplimiento del plan

institucional que lo llevará a ser reclasificado en custodia mediana o máxima, esta excepción no podrá ser considerada.[18]

Expuesto el derecho aplicable, veamos porqué debimos expedir el recurso.

### III

El señor Ortiz Pérez solicitó que revisáramos las determinaciones de los foros recurridos. Alegó que Corrección le aplicó las disposiciones de reclasificación incorrectas dado que los Reglamentos 8281, 9033 y 9151 no se habían promulgado al momento en que fue sentenciado. Adujo que procedía evaluar su reclasificación de custodia a base del Reglamento Núm. 6067 vigente al momento en que se cometieron los hechos delictivos.

De otra parte, alegó que tanto la gravedad del delito como el término que este debe cumplir para pasar ante la consideración de la Junta se relacionan directamente con la sentencia impuesta. Discutió que, dado que la sentencia nunca va a cambiar y que la extensión de esta no puede ser el factor único para negar la reclasificación de custodia, Corrección abusó de su discreción al ratificarle en custodia mediana.[19] Arguyó que, si al momento de la reclasificación se toma en consideración que le restan más de 15 años para ser

---

[18] Depto. Corrección, Reglamento Núm. 9151, Apéndice K, Sección III (C).
[19] Cruz Negrón vs. Adm. de Corrección, 164 DPR 341 (2005).

considerado por la Junta, nunca va a será elegible para un nivel de custodia menor. Finalmente, argumentó que el Comité debió considerar que ha demostrado gran progreso en su rehabilitación y tiene una conducta excelente.

Examinados los argumentos del señor Ortiz Pérez y el derecho reseñado, considero que debimos expedir el recurso de *certiorari*. Ciertamente, el peticionario trae planteamientos que ameritaban los pronunciamientos de este Foro. Este caso, por ejemplo, nos permitía evaluar si para determinar su clasificación se le pueden aplicar a una persona privada de libertad unos criterios más onerosos que los que existían al momento de ser sentenciada. Al respecto, era importante considerar el hecho de que el reglamento en el cual se adoptó la modificación aquí en controversia y que retiene al señor Ortiz Pérez en custodia mediana: (1) impone criterios más restrictivos que los anteriores para pasar a un nivel de custodia menor, y (2) no estaba vigente cuando lo sentenciaron.

Como vimos, el Reglamento Núm. 6067, vigente cuando le impusieron la pena al señor Ortiz Pérez, establecía únicamente dos modificaciones no discrecionales que no le aplicaban al señor Ortiz Pérez. Por otra parte, permitía que discrecionalmente se impusiera un nivel de custodia más alto al que

resultó en la escala, si le restaban más de 5 años para ser considerado por la Junta.

En comparación, el Reglamento Núm. 9151 -que se utilizó para la reclasificación de custodia del señor Ortiz Pérez - aunque disminuyó el tiempo que la persona debe esperar para que no le aplique el criterio, **transformó el requisito a una modificación no discrecional.**

Según el peticionario, la modificación no discrecional del reglamento más reciente es más onerosa que las anteriores porque su efecto es que, con toda probabilidad, él nunca tendrá la oportunidad de estar en custodia mínima, a menos que esté en custodia mediana ininterrumpidamente por 10 años y cumpla con varios requisitos. El señor Ortiz Pérez tiene 45 años actualmente y cualificará para libertad bajo palabra en el 2044. Esto significa que --para todos los efectos-- no se le concederá una rebaja de custodia hasta que tenga 54 años, indistintamente del progreso de su rehabilitación. Eso lleva a cuestionarse si la revisión rutinaria de reclasificación, que conforme al Reglamento Núm. 9151 se debe realizar cada 12 meses para las personas en custodia mínima o mediana, es realmente un timo. Esto pues cualquier persona a quien le falten más de 15 años para cualificar para libertad bajo palabra se reclasificará en custodia mediana sin que el Comité tenga discreción.

Cabe preguntarse, pues, si es válida la aplicación retroactiva de un reglamento que impone condiciones más onerosas a las libertades y beneficios de las personas privadas de libertad que aquellas existentes al momento de ingresar al sistema correccional. Más importante aún, ¿es razonable que Corrección imponga criterios más severos para la reclasificación de custodia cuando el fin de nuestro sistema correccional --elevado a rango constitucional-- es la rehabilitación moral y social del transgresor? ¿No está el reglamento en un choque frontal con la Constitución?

Aun cuando se reconoce que las agencias tienen la facultad de promulgar reglamentos conforme a su ley habilitadora y su conocimiento especializado, existe un imperativo constitucional que consagra el objetivo rehabilitador de nuestro sistema penal y correccional. Este mandato no solo tiene que dirigir a Corrección, sino que constituye una obligación del Estado para con las personas que están bajo su custodia. Nuestras instituciones tienen que permitir que las personas privadas de libertad aprovechen los programas y beneficios que les brinda el servicio correccional para conseguir el fin último de reinserción social una vez cumplan su pena. Esta no es una mera norma directiva, <u>es el fin último del sistema</u>.

A partir de que se estableció el Plan de Reorganización Núm. 2 el Departamento de Corrección intercambió varios de los criterios para determinar la reclasificación de custodia. En particular, ¿qué justificación tuvo la agencia para imponerle carácter imperativo a una modificación que originalmente era discrecional? ¿su actuación fue razonable? Nótese que el cambio implica que el Comité tendrá que ignorar e invisibilizar todos los esfuerzos de la persona hacia su rehabilitación.

Queda claro: debimos analizar la modificación no discrecional en controversia. El mandato constitucional impone a las instituciones penales el deber de promover la rehabilitación moral y social de los confinados. Como parte de ese análisis había que preguntarse si el Reglamento Núm. 9151 que se promulgó en virtud del Plan de Reorganización Núm. 2 de 2011 cumple con facilitar esa rehabilitación, o si, por el contrario, convierte en letra muerta la política pública del Estado. Hay que ser en extremo cuidadosos. No podemos ser partícipes, por inacción, de refrendar actuaciones de una agencia cuyo efecto sea --una y otra vez-- cambiar las reglas del juego hasta hacer inasequible la acreencia de un nivel más bajo de custodia y, por ende, lacerar mortalmente el derecho a la rehabilitación.

Hubiese expedido el recurso que presentó el señor Ortiz Pérez. En vista de que una Mayoría optó por denegarlo, disiento.


                        Maite D. Oronoz Rodríguez
                             Jueza Presidenta

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Geovanny Ortiz Pérez

     Peticionario

                              CC-2021-0063    *Certiorari*

     v.

Departamento de Corrección
y Rehabilitación

     Recurrido

Voto Particular Disidente emitido por el Juez Asociado señor COLÓN PÉREZ, al cual se une el Juez Asociado señor ESTRELLA MARTÍNEZ.

En San Juan, Puerto Rico, a 21 de mayo de 2021.

> En nuestra cultura hemos dado por supuesta la existencia de la cárcel. Nadie se preocupa ya por preguntar: ¿por qué encerrar? . . . ¿Qué es lo que se persigue realmente con el encierro de las personas? ¿Castigar? ¿Amedrentar a potenciales delincuentes? ¿Rehabilitar? En Puerto Rico los tres fines se han enarbolado para justificar la existencia del encierro carcelario.[20]

En el día de hoy, una mayoría de este Tribunal desaprovecha -- nuevamente -- la oportunidad de evaluar la legitimidad de cierta disposición reglamentaria, denominada modificación no discrecional, la cual es utilizada por el Departamento

---

[20] Fernando Picó Bauermeister, *El día menos pensado: historia de los presidiarios de Puerto Rico (1793-1993)*, 2da ed., Río Piedras, Ediciones Huracán, págs. 69-70.

de Corrección y Rehabilitación al momento de realizar la reclasificación de custodia de las personas confinadas. Lo anterior, en un escenario en donde a la persona confinada -- la cual en el *Formulario de Reclasificación de Custodia* recibió la puntuación objetiva de dos (2) puntos correspondientes a custodia mínima -- se le denegó la referida reclasificación, por el mero hecho de que a ésta le faltaban más de quince (15) años para ser considerada merecedora de los beneficios que otorga la Junta de Libertad Bajo Palabra. Esto último -- considerado por el Departamento de Corrección y Rehabilitación como modificación no discrecional -- fue el factor determinante para denegar la reclasificación de custodia a una mínima.

Adelantamos que, luego de un detenido y cuidadoso examen de los hechos ante nuestra consideración, así como del derecho aplicable, somos de la opinión que la cuestionada disposición reglamentaria es contraria al mandato constitucional y política pública del Estado Libre Asociado de Puerto Rico dirigida a la rehabilitación moral y social de toda persona confinada. Por eso, disentimos. Veamos.

## I.

Los hechos medulares que dan margen al presente litigio no están en controversia. Por hechos ocurridos en el 1997, el señor Geovanny Ortiz Pérez (en adelante, "señor Ortiz Pérez" o "peticionario") fue ingresado a una institución carcelaria en el 1999 y sentenciado, el 3 de

noviembre de 2000, a ciento cincuenta y dos (152) años de prisión. Según se desprende de los documentos ante nuestra consideración, el señor Ortiz Pérez fue inicialmente clasificado a un nivel de custodia máxima. Posteriormente, en fecha que no surge del recurso ante nos, fue reclasificado a un nivel de custodia mediana.

Así las cosas, y como parte de una evaluación rutinaria de reclasificación de custodia, el pasado 28 de septiembre de 2020 el Comité de Clasificación y Tratamiento, adscrito al Departamento de Corrección y Rehabilitación, determinó ratificar el nivel de custodia mediana que el señor Ortiz Pérez poseía. Ello, a pesar de que este último obtuvo la puntuación objetiva para una custodia mínima. Como fundamento único para dicha determinación, el Comité de Clasificación y Tratamiento señaló que:

> **La Escala de Reclasificación otorga una puntuación de Mínima custodia, se utiliza una Modificiación No Discrecional para nivel de custodia [más] alto[.]** La puntuación Subestima la Gravedad de los delitos, la Severidad, Naturaleza y tiempo proyectado en confinamiento en comparación al que ha cumplido son determinantes los grados de supervisión y seguridad que este caso amerita, confinados a los que le falta [más] de 15 años.[21]

El Comité de Clasificación y Tratamiento, añadió -- en determinado espacio del *Formulario de Reclasificación de Custodia* -- que, conforme a la ***Enmienda al Manual para la Clasificación de los Confinados*, Reglamento Núm. 9033, aprobado el 8 de julio de 2018** (en adelante, "Enmienda al

---

[21] Véase, Apéndice del recurso de *certiorari*, Anejo 2.

Manual Núm. 9033-2018"), por faltarle más de quince (15) años al señor Ortiz Pérez para ser considerado por la Junta de Libertad Bajo Palabra, debía mantenerse bajo medidas medianas de seguridad.[22]

Enterado de ello, al día siguiente, el señor Ortiz Pérez solicitó la reconsideración de la referida determinación. En esencia, resaltó su destacada disciplina y fiel cumplimiento con todas las terapias y diversos programas educativos durante los años cumplidos desde su confinamiento. Asimismo, destacó que, a su modo de ver, el Comité de Clasificación y Tratamiento había abusado de su discreción al considerar como único factor para denegar una reclasificación de custodia la condena dictada en contra de éste y, con ello, la naturaleza de su delito. **Así pues, argumentó que el delito por el cual fue sentenciado siempre será grave, por lo que mientras la extensión de su condena sea el único factor con mayor peso, su derecho a la rehabilitación quedará anulado o suspendido en un tiempo irreal.**

Examinado el petitorio del señor Ortiz Pérez, la Supervisora de Clasificación, funcionaria de la *Oficina de Clasificación de Confinados* del Departamento de Corrección y Rehabilitación, denegó la solicitud de reconsideración y concurrió con la determinación del Comité de Clasificación y Tratamiento. Explicó que el ***Manual para la Clasificación de los Confinados*, Reglamento Núm. 9151, aprobado el 20 de**

---

[22] Véase, Apéndice del recurso de *certiorari*, Anejo 3.

**febrero de 2020** (en adelante, "Manual Núm. 9151-2020"), establece como factor de modificación no discrecional, que aquellos confinados a los cuales le resten más de quince (15) años para ser elegibles para libertad bajo palabra sean ubicados en custodia mediana. Asimismo, la Supervisora de Clasificación reveló que, en el caso del señor Ortiz Pérez, el mínimo de su sentencia carcelaria está calendarizado para el 29 de junio de 2044 y la fecha prevista de excarcelación es el 11 de diciembre de 2131.

Insatisfecho aún, el 9 de noviembre de 2020 el señor Ortiz Pérez presentó un recurso de revisión judicial ante el Tribunal de Apelaciones. En su escrito, reclamó que la disposición reglamentaria sobre la cual descansó el Comité de Clasificación y Tratamiento, y conjuntamente el Departamento de Corrección y Rehabilitación, no es válida, pues la misma se aprobó con posterioridad a la comisión de los delitos por los cuales lo sentenciaron. En tono similar, arguyó que la aplicación de la referida disposición reglamentaria viola la prohibición constitucional contra leyes *ex post facto*. **Enfatizó, además, que su puntuación en la *Escala de Reclasificación* corresponde a custodia mínima y que no se le puede aplicar la modificación no discrecional, porque ello tendría el efecto de que "nunca sería elegible para un nivel menor de custodia", a pesar de por años haber demostrado una completa rehabilitación.**

Examinado el escrito del señor Ortiz Pérez, el foro apelativo intermedio notificó una *Sentencia*, en virtud de la cual confirmó la determinación del Departamento de Corrección y Rehabilitación. Razonó que las disposiciones del ***Manual para la Clasificación de los Confinados*, Reglamento Núm. 8281 de 30 de noviembre de 2012, así como su versión enmendada (Núm. 9033-2018),** pueden ser válidamente aplicadas al señor Ortiz Pérez, y advirtió que no se trata de una reglamentación que podría "alargar el término de reclusión a ser cumplido" por lo que no aplicaba la prohibición contra leyes *ex post facto*.[23] No obstante, no se expresó en cuanto a el Manual Núm. 9151-2020. En consecuencia, resolvió que la referida agencia administrativa actuó conforme a derecho al ratificar la custodia mediana del peticionario.

El Tribunal de Apelaciones subrayó que la conclusión a la que llegaba respondía "exclusivamente a la política pública establecida por el Departamento de Corrección y Rehabilitación a través de la citada reglamentación, la cual estamos obligados a respetar".[24] Al respecto, el foro apelativo intermedio señaló que:

> No nos corresponde, así pues, pasar juicio sobre la sabiduría de dicha política pública, de conformidad con la cual, **un confinado podría estar décadas sin ser elegible, o posiblemente nunca advenir elegible, para ser considerado para custodia mínima, ello independientemente de lo ejemplar que pudiese resultar su conducta durante su confinamiento o de sus esfuerzos de**

---

[23] Véase, Apéndice del recurso de *certiorari*, Anejo 8.

[24] *Íd.*

**rehabilitación**. Le corresponde a Corrección determinar si continuar con la vigencia de esta política reglamentaria es lo más conveniente o deseable. (Énfasis nuestro).[25]

Inconforme con dicho proceder, el señor Ortiz Pérez acude ante nos mediante recurso de *certiorari*, en el cual reitera similares argumentos a los presentados ante los foros precedidos. En particular, destaca que el Tribunal de Apelaciones erró al confirmar la determinación administrativa de Departamento de Corrección y Rehabilitación.

A juicio del señor Ortiz Pérez, el proceder del foro apelativo intermedio es: 1) contrario a la prohibición constitucional de aplicar una ley o reglamento de forma *ex post facto*, ya que la referida disposición no existía cuando ocurrieron los hechos imputados, ni cuando fue ingresado y sentenciado a prisión; y 2) contrario a derecho, en la medida que lo inhabilita de beneficiarse de los privilegios que conlleva la reclasificación de custodia, así como su derecho constitucional a la rehabilitación moral y social. En fin, sostiene que el Departamento de Corrección y Rehabilitación abusó de los poderes delegados al implementar una disposición reglamentaria de modificación no discrecional, que tiene el grave efecto de eliminar posibilidad alguna de que cualifique en un tiempo razonable o real al nivel de custodia mínima. Aunque por fundamentos un poco distintos, le asiste la razón. Nos explicamos.

---

[25] *Íd.*

II.

A.

Como es sabido, el Artículo VI, Sección 19 de la Constitución del Estado Libre Asociado de Puerto Rico, Const. ELA Art. VI, Sec. 19, LPRA, Tomo 1., dispone que será la política pública del Estado **"reglamentar las instituciones penales para que sirvan a sus propósitos en forma efectiva y propender, dentro de los recursos disponibles, al tratamiento adecuado de los delincuentes para hacer posible su rehabilitación moral y social"**. (Énfasis suplido).

Con relación al alcance de la referida cláusula constitucional, el entonces miembro de la Asamblea Constituyente y pasado Juez Presidente de este Tribunal, Don José Trías Monge, en su obra *Historia Constitucional de Puerto Rico*, expresó que:

> En el Puerto Rico de la época, y en esto se ha hecho muy poco progreso desde entonces, existía una conciencia un tanto cruda, mayormente por la escasez de dinero y la ausencia de Estados Unidos y otros países también, de un adecuado entendimiento de los derechos del ser humano encarcelado.
>
> . . .
>
> Tanto la Comisión de Asuntos Generales en su informe, como la delegación socialista en su anteproyecto de constitución, estimaban que lo expresado sobre política pública penal debía ser parte de la Carta de Derechos. Aunque a primera vista, esto parece una simple cuestión de estilo, los tiempos no estaban maduros para tal paso, habiéndose logrado mucho con lo insertado en la sección 19 del art. VI de la Constitución. 3 José Trías Monge, *Historia Constitucional de Puerto Rico*, 235-236 (1982).

De hecho, no fue hasta dos (2) décadas más tarde -- y en respuesta al hacinamiento y al nivel de violencia extrema en el sistema carcelario del País -- que, en virtud del referido mandato constitucional, la Asamblea Legislativa aprobó la Ley Orgánica de la Administración de Corrección, Ley Núm. 116 de 22 de julio de 1974, 4 LPRA secs. 1101-1284 (2010) (derogada 2011).[26] Esta legislación tuvo como propósito crear una Administración de Corrección con los poderes y flexibilidad necesaria para implementar la política pública recogida en nuestra Constitución, entiéndase maximizar la posibilidad de rehabilitación del delincuente. Véase, Exposición de Motivos, 4 LPRA sec. 1101 (2010) (derogada 2011).

Años más tarde, la antes mencionada ley fue derogada y sustituida por la Ley de Mandato Constitucional de Rehabilitación, Ley Núm. 377-2004, 4 LPRA secs. 1611-1616 (derogada 2011); la cual al poco tiempo fue reemplazada por el hoy vigente Plan de Reorganización del Departamento de Corrección y Rehabilitación de 2011, (en adelante, "Plan de Reorganización 2-2011"), 3 LPRA Ap. XVIII. Con la aprobación de este último estatuto, se consolidaron varias agencias y se decretó como política pública del Estado:

> [L]a creación de un sistema integrado de seguridad y administración correccional donde las funciones y deberes se armonicen en un proceso facilitador a la imposición de penas y medidas de seguridad, así como a la custodia de los ciudadanos que han sido encontrados incursos

---

[26] Véase, Luis A. Zambrana González, *La rehabilitación de la persona convicta como derecho humano: su tensión con el ordenamiento penitenciario de Puerto Rico*, 87 Rev. Jur. UPR 1117, 1134-1135 (2018), citando a Fernando Picó Bauermeister, *op. cit.*

en la comisión de un delito o falta y **que establezcan procesos de rehabilitación moral y social del miembro de la población correccional o transgresor, a fin de fomentar su reincorporación a la sociedad.** (Énfasis suplido). Art. 2 del Plan de Reorganización 2-2011, 3 LPRA Ap. XVIII.

En otras palabras, dicho Plan continuó con el objetivo principal de implementar un proceso que facilite la imposición de custodias y el establecimiento de programas de rehabilitación moral y social con el fin último de fomentar la reincorporación de las personas confinadas a la sociedad. *Íd*. Véase, también, *Ibarra González v. Depto. Corrección*, 194 DPR 29, 42 (2015) (Estrella Martínez, Voto particular disidente).

En vista de ello, y bajo el aún vigente *Plan de Reorganización* 2-2011, tan pronto una persona es sentenciada a la pena de cárcel, se activa el mandato constitucional de rehabilitación moral y social, y el Estado, a través del Departamento de Corrección y Rehabilitación, "tiene la responsabilidad de configurar un plan institucional individualizado de rehabilitación para cada persona confinada". Luis A. Zambrana González, *op. cit*, pág. 1138. Véase, también, Art. 10 del Plan de Reorganización 2-2011, *supra*. Para cumplir con esa responsabilidad, se han diseñado una serie de medidas dirigidas a sustanciar la rehabilitación en el sistema carcelario puertorriqueño, entre ellas, la clasificación de custodia de la persona privada de libertad. Véase, Zambrana González, *op. cit*, págs. 1137-1138.

B.

A esos efectos, y en el descargue de los deberes y facultades delegadas al Departamento de Corrección y Rehabilitación, la referida agencia recientemente adoptó el nuevo Manual Núm. 9151-2020, *supra*. **Este cuerpo reglamentario -- así como sus antecesores --,[27] en la sección sobre Perspectiva General, expresa que "la clasificación de los confinados consiste en la separación sistemática y evolutiva de éstos en subgrupos, en virtud de la necesidad de cada individuo, y las exigencias y necesidades de la sociedad", desde la fecha de ingreso hasta la excarcelación de la persona confinada**. (Énfasis suplido). *Íd*. Véase, además, *López Borges v. Adm. de Corrección*, 185 DPR 603, 608 (2012).

A su vez, la Sección 1 del Manual Núm. 9151-2020, *supra*, dispone que en cada institución del Departamento de Corrección y Rehabilitación se establecerá un *Comité de Clasificación y Tratamiento*, el cual será responsable de evaluar las necesidades de seguridad y de programas de los confinados sentenciados. La referida evaluación se realizará mediante una clasificación inicial y un proceso de reclasificación periódico de cada persona confinada, según el nivel de custodia en el que se encuentre.

---

[27] Véase, por ejemplo, Departamento de Corrección y Rehabilitación, *Manual para la clasificación de confinados*, Núm. 8281 (30 de noviembre de 2012); Departamento de Corrección y Rehabilitación, *Enmienda al Manual para la clasificación de confinados*, Núm. 9033 (18 de julio de 2018).

La evaluación inicial es una gestión que se realiza cuando se recibe en la institución penal a la persona sumariada o sentenciada. En el caso de las personas sentenciadas, una vez ingresada se le asigna un técnico de servicios sociopenal, con el propósito de completar una evaluación de clasificación inicial mediante entrevista y con el objetivo de completar el *Formulario de Evaluación Inicial de Custodia*, (en adelante, "*Formulario*"). Dicho *Formulario* se presentará con una recomendación del técnico ante el Comité de Clasificación y Tratamiento, quien entonces completará otros documentos y determinará y notificará el nivel de custodia inicial de la persona ingresada. Véase, Sec. 6 del Manual Núm. 9151-2020, *supra*.

**Por su parte, la Sección 7 del Manual Núm. 9151-2020, *supra*, al igual que los precedidos, establece lo relativo al proceso de reclasificación de custodia y dispone que esta evaluación se asemeja a la inicial "pero recalca aún más la conducta institucional como reflejo del comportamiento real del confinado durante su reclusión".** (Énfasis suplido).

**Ello es así, pues como bien expresa el propio texto reglamentario "es importante que los confinados que cumplen sentencias prolongadas tengan la oportunidad de obtener una reducción en niveles de custodia mediante el cumplimiento con los requisitos de la institución".** (Énfasis suplido). *Íd*. De ahí que, las personas confinadas en custodia mínima y mediana tendrán una revisión de reclasificación de custodia anualmente, mientras que para las de custodia

máxima será cada seis (6) meses. Véase, Sec. 7(III)(B) del Manual Núm. 9151-2020, *supra*. Es decir, a mayor nivel de custodia, mayor la frecuencia de la evaluación de reclasificación de custodia. *Ibarra González v. Depto. Corrección*, *supra*, págs. 42-43; *López Borges v. Adm. de Corrección*, *supra*, pág. 609.

Dicho ello, es menester señalar aquí que la reducción del nivel de custodia de una persona confinada es parte del derecho constitucional a la rehabilitación que ésta tiene, el cual queda claramente reflejado en el Manual Núm. 9151-2020, *supra*, al disponer que, "**para lograr un sistema de clasificación funcional, el proceso tiene que ubicar a cada confinado en el programa y en el nivel de custodia menos restrictivo posible, sin menoscabar la seguridad…**". (Énfasis suplido). Se trata, pues, de un balance de intereses entre el derecho del confinado a una rehabilitación moral y social, *vis a vis* la seguridad de la comunidad correccional y la sociedad en general.

C.

De otra parte, se advierte en el Manual Núm. 9151-2020, *supra*, que la evaluación de custodia a la que hemos hecho referencia no necesariamente tendrá el resultado de un cambio en la reclasificación de custodia o asignación de vivienda. Lo anterior, dependerá más bien del resultado de un proceso de evaluación que queda recogido en el *Formulario de Reclasificación de Custodia*.

Al examinar el referido *Formulario*, el cual se ubica en el Apéndice K del Manual Núm. 9151-2020, *supra*, junto al documento titulado *Instrucciones para Formulario de Reclasificación de Custodia* (en adelante, "*Instrucciones*"), vemos que éste está organizado en varias secciones, a saber: I. Identificación; II. Evaluación de custodia; III. Resumen de escala y recomendaciones; IV. Revisión por parte del Comité; V. Asignación de vivienda del confinado; VI. Certificación.

En lo pertinente, en **la Sección II. Evaluación de custodia**, se otorgan distintas puntuaciones en los siguientes renglones: 1) gravedad de cargos/sentencias actuales; 2) historial de delitos graves anteriores; 3) historial de delitos graves anteriores; 4) número de acciones disciplinarias; 5) acción disciplinaria más seria; 6) sentencias anteriores por delitos graves como adulto (últimos cinco años); 7) participación en programas; 8) edad actual. Vale mencionar que cada uno de estos factores se describen en el documento de *Instrucciones*.

Por su parte, la **Sección III. Resumen de escala y recomendaciones**, contiene unos renglones adicionales, a saber: A) nivel de custodia indicado por escala, en donde se debe circular el nivel de custodia según la puntuación arrojada en el sección II; B) consideraciones especiales de manejo, la cual atiende asuntos de administración que merecen la atención y posible intervención del personal en términos de vivienda o supervisión especial; **C)**

**modificaciones no discrecionales**, en donde se marcan encasillados con ciertos factores obligatorios según cumpla con ellos el confinado evaluado; D) modificaciones discrecionales para un nivel de custodia más alto, las cuales debe estar basada en documentación escrita; E) modificaciones discrecionales para un nivel de custodia más bajo, que por igual debe estar fundamentada en documentos escritos; y F) nivel de custodia recomendado y asignación de custodia, que es donde se indica la recomendación para nivel de custodia a la luz de todo lo antes evaluado.

En lo concerniente a la controversia de marras, las modificaciones no discrecionales, según recogidas en el *Formulario* y descritas en las *Instrucciones* son tres (3): Confinados con sentencias de 99 años o más. . .

> **Más de quince años para ser elegible a libertad bajo palabra: Al confinado que le resta por cumplir más de quince años para ser considerado por la Junta de Libertad Bajo Palabra, se deberá ubicar en una institución de <u>custodia mediana</u>.**
>
> **A modo de excepción aquel confinado que haya cumplido diez (10) años clasificado en custodia mediana, de manera ininterrumpida y que cumpla con el plan institucional asignado, sin incurrir en informes o evaluaciones negativas, sin incurrir en resultados positivos en pruebas toxicológicas rápidas o realizadas por el Instituto de Ciencia Forense o en positivo administrativo y que demuestre cambios positivos durante el confinamiento, podrá ser reclasificado en <u>custodia mínima</u>.** Si el confinado, luego de ser reclasificado en custodia mínima, incurre en algún acto o incumplimiento del plan institucional que lo llevará a ser reclasificado en custodia mediana o máxima, esta excepción no podrá ser considerada.
>
> Orden de Deportación por Casos o Sentencias Pendientes a Cumplir (DEP). . .

Como se puede apreciar, bajo el renglón antes señalado, la persona confinada se vería impedida de ser reclasificada a otro nivel de custodia si le resta por cumplir más de quince (15) años para ser considerada por la Junta de Libertad Bajo Palabra. No obstante, a modo de excepción, la persona confinada que ininterrumpida haya cumplido diez (10) años clasificado en custodia mediana, y que de forma satisfactoria haya completado el plan institucional asignado, sin incurrir en informes o evaluaciones negativas, entre otros, podrá ser reclasificado en custodia mínima.

Al igual que la clasificación inicial, este *Formulario* es completado por un técnico sociopenal quien -- a base de las puntuaciones, renglones marcados, y documentación anejada -- recomienda el nivel de custodia del confinado bajo evaluación, lo cual podrá variar entre máxima, mediana o mínima. Esta recomendación se remitirá al Comité de Clasificación y Tratamiento, quien llegará a un acuerdo de reclasificación de custodia, la cual como mencionamos podría tener el efecto de ratificar el nivel donde se encuentra la persona confinada al momento de la evaluación. El confinado que esté inconforme con la determinación del Comité de Clasificación y Tratamiento podrá solicitar la reconsideración. Véase, Sec. 7(V) del Manual Núm.9151-2020, *supra*.

D.

Ahora bien, vale la pena señalar aquí lo dinámico que ha sido el contenido del referido *Formulario*. Así, por

ejemplo, en el Manual Núm. 8281-2012, *supra*, solo se disponía de dos (2) factores bajo el renglón de modificaciones no discrecionales, a saber: 1) que el confinado tiene o probablemente tendrá una orden de deportación; y 2) que "[al]l confinado le resta más de quince años para cualificar para libertad bajo palabra[, se le debe designar] a una institución de <u>seguridad mediana</u>"; sobre este último nada más se establecía. Véase, también, *Ibarra González v. Depto. Corrección*, *supra*, págs. 45-46.[28]

Posteriormente, con la Enmienda al Manual Núm. 9033-2018, *supra*, el texto del segundo factor del antes mencionado renglón se modificó a los efectos de que al confinado que le reste más de quince (15) años para cualificar para libertad bajo palabra deberá ser designado a una institución de <u>custodia mediana.</u>

**Nótese, sin embargo, que en marzo de 2020 el Departamento de Corrección y Rehabilitación nuevamente modificó las citadas disposiciones reglamentarias, al crear un tercer factor de modificación no discrecional (confinados con sentencias de 99 años o más), así como al también implementar una excepción en el referido renglón, particularmente en el factor de "[m]ás de quince años para**

---

[28] Inclusive, hace dos (2) décadas atrás la reglamentación que estaba en vigor era el *Manual para la clasificación de confinados*, **Reglamento Núm. 6067, aprobado el 23 de diciembre de 1999,** el cual contenía otros factores bajo el referido renglón de modificaciones no discrecionales. De una revisión al *Formulario* de ese entonces, se desprende que, en el referido renglón de modificaciones no discrecionales, sólo ubicaban los siguientes factores: 1) reincidencia habitual, 2) orden de deportación y 3) comportamiento sexual agresivo. De manera que, al compararlo con la reglamentación vigente, de los mencionados factores sólo se ha mantenido el de orden de deportación.

**ser elegible a libertad bajo palabra"**. Es decir, hay una distinción fundamental entre lo dispuesto en la Enmienda al Manual Núm. 9033-2018, si se compara con el Manual Núm. 9151-2020, el cual entró en vigor en marzo del 2020.

De todo ello, se puede colegir entonces que el contenido del *Formulario* -- sin duda -- es susceptible a cambios constantes, toda vez que con el pasar del tiempo el Departamento de Corrección y Rehabilitación ha alterado los factores a considerar, entre estos, los establecidos bajo el renglón de modificaciones no discrecionales.[29]

**A tenor con lo antes expuesto, este Tribunal ha sentenciado que la evaluación de reclasificación de custodia es la médula de un sistema correccional eficaz, por lo cual, "si sólo se [evalúa] la conducta por la que está presa la persona o se le diera mayor importancia a las características de su sentencia, no tendría sentido alguno la revisión periódica del nivel de custodia, pues el resultado del análisis siempre sería el mismo"**. (Énfasis suplido). *López Borges v. Adm. de Corrección*, *supra*, pág. 609. **Dicho de otro modo, "tomar en consideración únicamente un factor de la condena al momento de reclasificar al confinado, por ejemplo, la extensión de la sentencia, constituye un claro abuso de discreción por parte de**

---

[29] Vale subrayar aquí que, en cierta medida, estas alteraciones -- a los factores evaluados en el referido *Formulario* -- responde a cuestionamientos jurídico-legales planteados ante este Tribunal y ante el Tribunal Federal de Distrito para el Distrito de Puerto Rico. Véase, por ejemplo, *López Borges v. Adm. de Corrección*, *supra*, pág.615. Véase, además, *Morales Feliciano et al. v. Estado Libre Asociado de Puerto Rico*, 672 F. Supp. 591, 604-606 (1986). Véase también, *Ibarra González v. Depto. Corrección*, *supra*, págs. 47-48.

**Corrección**". (Énfasis suplido). *Íd.*, citando a *Cruz Negrón v. Administración*, 164 DPR 341, 358-359 (2005).

III.

Por otro lado, y para la correcta disposición de la controversia bajo estudio, resulta conveniente repasar la doctrina de revisión judicial de determinaciones administrativas, la cual establece que ese tipo de dictámenes son objeto de gran deferencia judicial y se presumen correctos. *IFCO Recycling v. Aut. Desp. Sólidos*, 184 DPR 712 (2012); *Torres Santiago v. Depto. Justicia*, 181 DPR 969 (2011); *Cruz Negrón v. Administración*, *supra*, pág. 357. La revisión judicial se limita, pues, a determinar si la actuación de la agencia administrativa fue razonable y cónsona con el propósito legislativo, si fue ilegal o si medió abuso de discreción. *OSC v. Triple-S*, 191 DPR 536 (2014); *DACO v. AFSCME*, 185 DPR 1 (2012); *Empresas Ferrer v. A.R.P.E.*, 172 DPR 254 (2007).

Sobre el particular, y en el contexto de las determinaciones de reclasificación de custodia acordadas por el Comité de Reclasificación y Tratamiento adscrito al Departamento de Corrección y Rehabilitación, hemos expresado que:

> Por lo general, la composición de estos comités la conforman peritos en el campo tales como técnicos sociopenales y oficiales o consejeros correccionales. Estos profesionales cuentan con la capacidad, la preparación, el conocimiento y la experiencia necesarios para atender las necesidades de los confinados y realizar este tipo de evaluaciones. Por esta razón, **una determinación formulada por el referido Comité debe ser sostenida por el foro**

**judicial siempre que no sea arbitraria, caprichosa y esté fundamentada en evidencia sustancial. Es decir, siempre que la decisión sea razonable, cumpla con el procedimiento establecido en las reglas y los manuales, y no altere los términos de la sentencia impuesta, el tribunal debe confirmarlo.** *Cruz Negrón v. Administración*, *supra*, págs. 354-355.

En otras palabras, una determinación administrativa sobre el nivel de custodia de una persona confinada debe sostenerse en la medida que sea razonable y persiga los propósitos legislativos delegados. A esos fines, no debemos perder de vista la función principal de la revisión judicial, la cual consiste en:

> asegurarse de que las agencias actúan dentro del marco de poder delegado y consistentes con la política legislativa. De ella emanan los controles del comportamiento administrativo. Por tal razón, la revisión judicial reviste extrema importancia. El control judicial sobre la acción administrativa le garantiza al ciudadano protección y remedio frente al organismo administrativo. D. Fernández Quiñones, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme*, 3ra ed., Bogotá, Ed. Forum, 2013, pág. 669.

Es, pues, a la luz de la normativa antes expuesta, que procedemos -- desde la disidencia -- a disponer del caso de epígrafe.

## IV.

Como adelantamos, en el presente caso nos corresponde evaluar la validez de cierta determinación del Comité de Reclasificación y Tratamiento adscrito al Departamento de Corrección y Rehabilitación, y confirmada por el Tribunal de Apelaciones. Mediante ella, se le denegó al señor Ortiz Pérez la reclasificación a nivel de custodia mínima, por el

único hecho de faltarle más de quince (15) años para ser considerado merecedor de los beneficios que otorga la Junta de Libertada Bajo Palabra. Esto último, como ya mencionamos, constituye un factor de modificación no discrecional según contemplado en la reglamentación del Departamento de Corrección y Rehabilitación. Reglamentación que, a todas luces, resulta inconstitucional.[30]

**Y es inconstitucional por ser contraria al mandato constitucional de hacer posible la rehabilitación moral y social de la persona privada de libertad.** Mandato constitucional que quedó estatuido en el Plan de Reorganización 2-2011, *supra*, y en el Manual Núm. 9151-2020, *supra*, y que exige que toda persona confinada sea separada de forma sistemática y evolutiva de los niveles de custodia, o subgrupos, al cual inicialmente ingresó. Máxime, si la persona confinada ha completado de forma satisfactoria los programas y terapias delineadas en su plan institucional de

---

[30] De entrada, nos cuestionamos si, -- dado a que, a la fecha de la evaluación de reclasificación de custodia aquí impugnada estaba en vigor el Manual Núm. 9151-2020 -- por excepción, ¿el señor Ortiz Pérez cualificaba para custodia mínima? Ello pues, si el señor Ortiz Pérez ha cumplido más de diez (10) años en custodia mediana (dato que no sabemos porque no surge del expediente ante nos), no vemos entonces cómo, a la luz del Manual Núm. 9151-2020, vigente a la fecha de la evaluación, no fue reclasificado a custodia mínima. Lo anterior, en virtud de los múltiples anejos que acompañan el recurso instado y que acredita *in extenso* los logros alcanzados por el peticionario, así como su cabal cumplimiento con las reglas disciplinarias y culminación exitosa de la programación y terapias. A modo de ejemplo, véanse los anejos 10 al 36 que acompañan el recurso de *certiorari*, de los cuales surgen múltiples certificados, reconocimientos y diplomas otorgados al señor Ortiz Pérez.

No obstante, y porque no se hace mención alguna de la citada excepción en las determinaciones administrativas ante nuestra consideración, ni surge con claridad la fecha en que se reclasificó a custodia mediana al peticionario, concluimos -- en primer lugar -- que hubiéramos expedido el presente recurso para aclarar este asunto.

rehabilitación, y no ha dado indicio alguno de menoscabar la seguridad.

No albergamos duda alguna que, en lo que respecta al presente caso tal mandato se incumplió, pues, el cuestionado factor de modificación no discrecional se convierte en el único factor o el factor de mayor peso en la determinación de reclasificación de custodia de una persona confinada, suprimiendo toda otra consideración; como lo sería, por ejemplo, la conducta institucional del confinado durante su reclusión. Adviértase, además, que en escenarios como el de autos, el mandato constitucional a la rehabilitación moral y social también queda obstaculizado al aplicarse el referido factor de modificación no discrecional, pues éste inhabilita a los confinados con condenas extensas a beneficiarse de los privilegios que conlleva la reclasificación de custodia.

Así pues, el factor de modificación no discrecional aquí en disputa, lejos de producir una separación sistemática y evolutiva del nivel de custodia de un confinado, produce un estado de inmutabilidad que lacera el propósito legislativo perseguido y, con ello, el mandato constitucional de propender la rehabilitación moral y social de la persona confinada. En consecuencia, aplicar el mismo en las determinaciones del Departamento de Corrección y Rehabilitación es, en efecto, un abuso de discreción de la referida agencia administrativa, ya que redunda en una determinación en extremo irrazonable.

V.

**En fin, y a modo de epílogo, la presente controversia hace forzoso plantearse la pregunta de si a casi setenta (70) años de la aprobación de nuestra Constitución, ¿aún los tiempos no maduran para asumir a cabalidad el mandato constitucional dirigido a concentrar los esfuerzos en la rehabilitación moral y social de las personas confinadas, con el fin último de reinsertarlas en la comunidad civil? En el día de hoy, la mayoría de esta Curia responde en la negativa.**

VI.

Es, pues, por todo lo anterior, que disentimos del resultado al que llega esta Curia en el día de hoy.

Ángel Colón Pérez
Juez Asociado