EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| El Pueblo de Puerto Rico<br><br>Recurrido<br><br>v.<br><br>Josué U. Torres Pérez<br><br>Peticionario | Certiorari<br><br>2022 TSPR 59<br><br>209 DPR ____ |
| --- | --- |

Número del Caso:  CC-2022-138


Fecha: 6 de mayo de 2022


Tribunal de Apelaciones:

    Panel XI


Abogado de la parte peticionaria:

    Por derecho propio



Materia: Resolución de la Sala Especial de Despacho con Voto Particular Disidente.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

INTEGRACIÓN DE SALA ESPECIAL

ORDEN

En San Juan, Puerto Rico, a 25 de abril de 2022.

Por estar igualmente divididos los votos de los miembros de esta sala, se constituye una Sala Especial de Despacho integrada por la Jueza Presidenta Oronoz Rodríguez, el Juez Asociado señor Martínez Torres, la Jueza Asociada señora Pabón Charneco, el Juez Asociado señor Rivera García y el Juez Asociado señor Estrella Martínez, para atender el caso CC-2022-138, El Pueblo de Puerto Rico v. Josué U. Torres Pérez.

Lo decretó y firma,

Maite D. Oronoz Rodríguez
Jueza Presidenta

CERTIFICO:

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| El Pueblo de Puerto Rico<br><br>Recurrido<br><br>v.<br><br>Josué U. Torres Pérez<br><br>Peticionario | CC-2022-0138 | Certiorari |

Sala de Especial integrada por la Jueza Presidenta Oronoz Rodríguez, el Juez Asociado señor Martínez Torres, la Jueza Asociada señora Pabón Charneco, el Juez Asociado señor Rivera García y el Juez Asociado señor Estrella Martínez

RESOLUCIÓN

En San Juan, Puerto Rico, a 6 de mayo de 2022.

A la petición de certiorari, no ha lugar.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Martínez Torres hace constar la siguiente expresión de conformidad: "No podemos ser indiferentes al Derecho. A lo que tenemos que ser indiferentes es al aplauso o reproche que provenga de la tribuna pública."

El Juez Asociado señor Estrella Martínez emitió un Voto particular disidente al cual se unió la Jueza Presidenta Oronoz Rodríguez.

La Jueza Presidenta Oronoz Rodríguez hace constar la expresión disidente siguiente:

> "No estoy de acuerdo con el proceder mayoritario. Debimos expedir el recurso y expresarnos sobre un asunto tan crucial como es la prohibición constitucional contra castigos crueles e inusitados en nuestra jurisdicción, específicamente en lo atinente a penas de reclusión exorbitantes impuestas a ofensores

menores de edad a la luz de los precedentes federales. Véanse: Montgomery v. Louisiana, 577 US 190 (2016); Miller v. Alabama, 567 US 460 (2012); Graham v. Florida, 560 US 48 (2010); Roper v. Simmons, 543 US 551 (2005).

Más aun, debimos asumir la tarea imperativa de interpretar nuestra propia Constitución conforme la facultad que tienen los estados de darle contenido a sus respectivas normas constitucionales. Véase: William J. Brennan, Jr., State Constitutions and the Protection of Individual Rights, 90 Harv. L. Rev. 489 (1977).

Correspondía, pues, realizar un ejercicio hermenéutico de la cláusula que prohíbe la imposición de castigos crueles e inusitados en la Sección 12 de nuestra Carta de Derechos, anclados en que esta "reconoce y concede unos derechos fundamentales con una visión más abarcadora y protectora que la Constitución de Estados Unidos". López Vives v. Policía de Puerto Rico, 118 DPR 219, 227 (1987). Véase, además, J. Trías Monge, Historia Constitucional de Puerto Rico, Río Piedras, Ed. Universitaria, 1980, Vol. III, págs. 169-170. Convocados por esa premisa —presente en nuestro ordenamiento en materia de derechos constitucionales—, merecía manifestarnos sobre los criterios federales de las condenas excesivas a ofensores menores de edad y su cabida en la interpretación de nuestra Constitución.

Con nuestro silencio, hoy ratificamos una pena de reclusión que, a todas luces, es inconstitucional. Se cerró la puerta a que el Sr. Josué U. Torres Pérez pueda exponer los elementos que podrían atenuar su responsabilidad penal, habida cuenta de que era un menor de edad cuando cometió los delitos por los cuales cumple una condena cruel e inusitada de 459 años."

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| El Pueblo de Puerto Rico<br><br>Recurrido<br><br>v.<br><br>Josué U. Torres Pérez<br><br>Peticionario | CC-2022-138 | Certiorari |

Voto particular disidente emitido por el Juez Asociado Señor ESTRELLA MARTÍNEZ al cual se une la Jueza Presidenta ORONOZ RODRÍGUEZ.

En San Juan, Puerto Rico, a 6 de mayo de 2022.

¿Constituye un castigo cruel e inusitado la imposición de una sentencia de 459 años sobre un menor de edad juzgado como adulto sin previamente tomar en consideración su minoridad de edad y las circunstancias que atenúan su culpabilidad conforme lo ordena el Tribunal Supremo federal por mandato constitucional? Evidentemente, la respuesta es en la afirmativa. Al no querer reconocer esa forzosa conclusión, nuevamente un bloque de este Tribunal se rehúsa a observar los precedentes establecidos por el Tribunal Supremo federal en Miller v. Alabama, infra, y Montgomery v. Louisiana, infra. No menos importante, también queda en letra muerta la garantía constitucional federal y local contra castigos crueles e inusitados.

Es lamentable que esta inacción cierre las puertas de la justicia a un reclamo válido de un recluso juzgado como adulto a pesar de su minoría de edad que, debido a la larga condena que pesa en su contra, no tiene una oportunidad real de demostrar su rehabilitación. Con la negativa de ordenar a que se corrijan este tipo de sentencia, una vez más queda exhibida la renuencia de un bloque de este Tribunal a reconocer la doctrina de culpabilidad atenuada de los menores de edad y a pautar la inconstitucionalidad de una sentencia de esta naturaleza. Ante ello, disiento.

En ese sentido, reitero los pronunciamientos que emití en Pueblo v. Álvarez Chevalier, 199 DPR 735 (2018) (Resolución) (Voto particular disidente del Juez Asociado Señor Estrella Martínez), en cuanto a que la indiferencia con la que un bloque de este Tribunal despacha este asunto perpetúa la idea de que todo menor sentenciado por delitos grave es indigno de demostrar su rehabilitación y reingresar a la libre comunidad. Con este proceder errado, un sector de este Tribunal claudica su obligación de garantizar la observancia de las garantías constitucionales reconocidas por el Tribunal Supremo federal y, peor aún, le da la espalda a la política constitucional tendente a la rehabilitación del convicto.

En vista de lo anterior, hubiese expedido el recurso ante nos y procedido a reconocer, sin ambages, los precedentes federales que nos obligan a aplicar la

doctrina de culpabilidad atenuada al momento de sentenciar a un menor de edad procesado como adulto. Al no ser este el criterio mayoritario, disiento. A continuación, expongo las bases fácticas y legales que orientan mi disenso.

**I**

Con apenas dieciséis (16) años, Josué U. Torres Pérez (señor Torres Pérez o Peticionario) fue acusado y procesado criminalmente como adulto tras habérsele imputado cuatro (4) cargos por asesinato en primer grado y violaciones a la Ley de Armas de Puerto Rico. Posteriormente, siendo aún menor de edad, este fue declarado culpable y sentenciado a 459 años de reclusión penal.[1]

Actualmente, el señor Torres Pérez ha cumplido dieciocho (18) años en prisión de máxima seguridad. Sin embargo, la posibilidad de que este pueda reingresar a la libre comunidad es prácticamente nula, pues tendría que cumplir 103 años en prisión antes de ser elegible para libertad bajo palabra.

Ante ello, en enero de 2021, el señor Torres Pérez instó ante el Tribunal de Primera Instancia una Moción al amparo de la Regla 192.1 de Procedimiento Criminal

---

[1] Esto tras ser sentenciado a cumplir cuatro (4) condenas consecutivas de 99 años por asesinato en primer grado, así como varias penas consecutivas por nueve (9) violaciones a la Ley de Armas de Puerto Rico, 25 LPRA ant. secs. 455 et seq (Ley de Armas). Además, se le impuso el pago de la pena especial dispuesta en el artículo 49-C del Código Penal de 1974, 33 LPRA ant. sec. 3214.

posterior a la sentencia. En ella, argumentó que su sentencia de 459 años de prisión era inconstitucional por violentar la prohibición contra castigos crueles e inusitados, según interpretado por el Tribunal Supremo de Estados Unidos en Miller v. Alabama, 567 US 460 (2012) y Montgomery v. Louisiana, 577 US 190 (2016). Argumentó que, al momento de ser sentenciado, los tribunales no tomaron en cuenta su minoridad de edad, ni realizaron un análisis individualizado de su caso y sus circunstancias particulares tal y como mandatan los precedentes federales.

En apoyo a su contención, adujo que la sentencia que le fue impuesta constituía una cadena perpetua sin derecho a libertad bajo palabra. En específico, apuntó a tres (3) aspectos que impiden que tenga una posibilidad real de demostrar su rehabilitación y cualificar para el beneficio de libertad bajo palabra, a saber: (1) que las penas consecutivas por las infracciones a la Ley de Armas, supra, expresamente excluyen esa posibilidad; (2) porque una vez satisfechas esas condenas, tendría que cumplir otros cuarenta (40) años por los delitos de asesinato antes de ser elegible al Programa de Libertad bajo palabra, y (3) como condición previa para que la Junta de Libertad bajo Palabra adquiriera jurisdicción sobre su persona, debe pagar una pena especial que le será imposible satisfacer por razón de haber estado recluido desde su minoría de edad.

Sin embargo, el Tribunal de Primera Instancia denegó lo solicitado de forma autómata y sin contar con la postura del Ministerio Público. En desacuerdo el señor Torres Pérez acudió ante el Tribunal de Apelaciones mediante una petición de certiorari. En su recurso, insistió en que el efecto práctico de su sentencia es el de una condena a cadena perpetua contraria a la jurisprudencia federal sobre condenas a menores de edad juzgados como adultos. No obstante, tras prescindir de la comparecencia del Procurador General, el foro apelativo intermedio emitió una Resolución en la que denegó el auto solicitado.

Así las cosas, el señor Torres Pérez acudió ante este Tribunal y reiteró que su condena es inconstitucional por tratarse de un castigo cruel e inusitado proscrito por la Octava Enmienda de la Constitución federal. Por ello, nos urgió a que reconociéramos e hiciéramos valer la jurisprudencia interpretativa del Tribunal Supremo de Estados Unidos en esta materia.

Confrontados con tal petición, este Tribunal debió garantizar el cumplimiento con la garantía constitucional que prohíbe los castigos crueles e inusitados. Específicamente en este caso donde la imposición de una sentencia de cadena perpetua a un menor implica que no tendrá posibilidad real de ser elegible a libertad bajo palabra. No obstante, una mayoría de una Sala Especial de este Tribunal no solo se negó a expedir el auto solicitado, sino que también se rehusó a observar los precedentes

vinculantes del máximo foro federal en esta materia. Con ello, se envía el mensaje desacertado de que los derechos constitucionales no cobijan con igual contundencia a la población privada de libertad.

La complacencia y el automatismo con el que se despacha el presente recurso hacen imperativo mi disenso. Por tanto, desde la disidencia procedo a exponer los fundamentos jurídicos por los cuales hubiese expedido el caso de autos y reconocido en esta jurisdicción el marco normativo y jurisprudencial que analizo a continuación.

## II

La Constitución del Gobierno de Puerto Rico establece como política pública la rehabilitación de toda persona privada de libertad. Ibarra González v. Depto. Corrección, 194 DPR 29, 41 (2015) (Resolución) (Voto particular disidente del Juez Asociado Señor Estrella Martínez). Para alcanzar ese fin, el ordenamiento penal y sus instituciones tienen que promover "dentro de los recursos disponibles, [e]l tratamiento adecuado de los delincuentes para hacer posible su rehabilitación moral y social". Art. VI, Sec. 19, Const. PR, LPRA, Tomo 1, ed. 2016, pág. 455.

Por otro lado, la Sección 12 de la Carta de Derechos establece una prohibición a imponer castigos crueles e inusitados. Art. II, Sec. 12, Const. PR, supra. Esta protección constituye una limitación al poder punitivo del Estado y exige que se observe una proporción razonable entre la pena impuesta y la conducta delictiva

incurrida. Pueblo v. Echavarría Rodríguez I, 128 DPR 299, 372 (1991). Por lo anterior, este Tribunal ha establecido que al examinar un cuestionamiento de proporcionalidad es necesario hacer un balance que, entre otras cosas, incluya: (1) el daño causado a la víctima y a la sociedad; (2) **la culpabilidad o la actitud mental del acusado al momento del hecho delictivo**, (3) **si este tendrá oportunidad de disfrutar del beneficio de libertad bajo palabra**. Íd.

De igual forma, la Octava Enmienda de la Constitución de los Estados Unidos también veda la imposición de castigos crueles e inusitados a los ciudadanos. Al interpretar el alcance de esta cláusula constitucional, el Tribunal Supremo federal ha impuesto límites más rigurosos a las ramas judiciales y políticas cuando se trata de la imposición de sentencias penales a menores de edad juzgados como adultos por su conducta delictiva. Esto, ya que se ha reconocido que, para efectos de la protección de la Octava Enmienda en el contexto de la imposición de responsabilidad penal, los menores son distintos a los adultos. En consecuencia, la Corte Suprema federal ha resuelto que algunos castigos pueden considerarse desproporcionados y, por lo tanto, inusitados bajo la Octava Enmienda cuando se imponen a un menor de edad juzgado como adulto. Es decir, cierto tipo de sentencia puede ser válida para conducta delictiva durante la adultez, mas no así en la minoría de edad. Pueblo v.

<u>Álvarez Chevalier</u>, supra, pág. 741. Esa diferenciación constituye la piedra angular de la doctrina de culpabilidad atenuada desarrollada por el Tribunal Supremo federal.

Esta línea jurisprudencial inició con <u>Roper v. Simmons</u>, 543 US 551 (2005). En este caso, un menor de diecisiete (17) años fue encontrado culpable de asesinato y sentenciado a pena de muerte. Posteriormente, la Corte Suprema de Missouri revocó el dictamen y la controversia llegó al Tribunal Supremo federal. Al interpretar el alcance de la Octava Enmienda, la Corte Suprema federal pautó que esta cláusula prohíbe de forma absoluta la imposición de la pena de muerte a un menor. Arribó a esa determinación al concluir que la severidad del castigo de la pena de muerte no es proporcional con la culpabilidad atenuada de un adolescente.

En ese análisis, se resaltó que existen diferencias psicosociales inherentes a la adolescencia que atenúan la culpabilidad moral atribuible a los menores. Íd., pág. 569. Tal y como anteriormente expresé:

> La primera diferencia reconocida por el Tribunal es que durante la minoría de edad la persona aún es inmadura y su sentido de responsabilidad no está completamente desarrollado. Por ello, los adolescentes tienden a realizar actos arriesgados, sin ulterior consideración por las consecuencias de su conducta. A su vez, sus decisiones no son producto de una reflexión ponderada, sino más bien, de su impulsividad.

> La segunda diferencia es que los menores son más vulnerables a influencias negativas externas y a las presiones de grupo. En ocasiones, estas influencias provienen de su propio círculo familiar o de un entorno inmediato que el adolescente no controla, ni tiene autonomía suficiente como para abstraerse de ese tipo de ambiente.
>
> La tercera y última diferencia reconocida por el Tribunal es que el carácter de la persona, durante la minoridad, no se ha desarrollado por completo. Por ende, los rasgos de personalidad que exhibe durante la misma son transitorios. De esta manera, su carácter es un factor cuestionable para juzgar qué tipo de individuo será una vez alcance la adultez. De igual modo, la conducta delictiva en la que éste incurra --por sí sola-- resulta poco confiable para concluir que el adolescente es una persona irremediablemente depravada. Por el contrario, la misma transitoriedad hace que estos sean más susceptibles al cambio, aumenta[n]do así sus probabilidades de una rehabilitación exitosa. Pueblo v. Álvarez Chevalier, supra, págs. 742-743 (haciendo referencia a Roper v. Simmons, supra).

Anclada en estas diferencias, la Corte Suprema federal concluyó que la conducta penal de un menor no debe ser igual de reprehensible que la de un adulto. Esto, debido a que un menor de edad tiene una culpabilidad atenuada que impide la imposición del castigo más severo (pena de muerte). Roper v. Simmons, supra, pág. 571.

Continuando con esa línea jurisprudencial, en Graham v. Florida, 560 US 48 (2010), se declaró inconstitucional una condena de cárcel perpetua sin derecho a libertad bajo

palabra impuesta a un menor de diecisiete (17) años por un delito que no implicó asesinato. Nuevamente, el máximo foro federal recurrió a la doctrina de la culpabilidad atenuada para resolver que este tipo de castigo es contrario a la Octava Enmienda. De esta forma, estableció una regla categórica en cuanto a que la protección constitucional contra castigos crueles e inusitados prohíbe el castigo de cadena perpetua, sin posibilidad de libertad bajo palabra, por delitos no homicidas cometidos por un menor de edad. Íd., págs. 74-75. Ello, al determinar que el encarcelamiento perpetuo de un menor de edad, como medida cautelar para proteger la seguridad comunitaria, es un castigo desproporcional y, por ende, violatorio de la Octava Enmienda cuando se impone en respuesta a delitos que no conllevan asesinato. Esto, ya que la cárcel de por vida implica una privación absoluta al disfrute de su libertad y les remueve a los adolescentes toda esperanza de rehabilitación, sin importar la buena conducta que tenga ni su mejoría en el carácter. Íd., págs. 69-70.

Como vemos, se recurrió a la doctrina de la culpabilidad atenuada para justificar el repudio constitucional a castigos irrevocables a personas que, por razón de su edad, no comprenden cabalmente la naturaleza y las consecuencias de sus actos antijurídicos. Íd., págs. 72-73. De este modo, el máximo foro federal señaló que los estados vienen obligados a darle una oportunidad significativa para salir en libertad en el futuro si este

demuestra que merece ser puesto en libertad debido a su madurez y rehabilitación. Íd., pág. 75.

La consolidación de la doctrina de culpabilidad atenuada prosiguió en Miller v. Alabama, supra. En el caso precitado, el foro apelativo federal de última instancia invalidó unas sentencias a cadenas perpetuas impuestas a dos (2) menores de edad sentenciados por asesinato estatutario. En ambos casos, las leyes de Alabama y Arkansas imponían, automáticamente, cadena perpetua a toda persona sentenciada por asesinato. Es decir, el juzgador no tenía la posibilidad de ejercer su discreción para imponer un castigo menos severo una vez el menor fuese declarado culpable del delito.

La Corte Suprema federal resolvió que la Octava Enmienda prohíbe la imposición de ese tipo de sentencia a un menor juzgado como adulto, puesto que le impide al juzgador tomar en consideración la culpabilidad atenuada del menor al momento de sentenciarlo. Íd., pág. 479.[2] Dicho

---

[2] El Tribunal Supremo expresó lo siguiente:

> By making youth (and all that accompanies it) irrelevant to imposition of that harshest prison sentence, such a scheme poses too great a risk of disproportionate punishment. […] But given all we have said in *Roper, Graham*, and this decision about children's diminished culpability and heightened capacity for change, we think appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon. Miller v. Alabama, supra, págs. 479-480 (citas omitidas).

razonamiento estuvo predicado en el principio subyacente en las decisiones en Roper v. Simmons, supra, y Graham v. Florida, supra, el cual es que el castigo más severo autorizado por el ordenamiento penal no debe proceder indistinta y automáticamente contra un menor de edad. Miller v. Alabama, supra, pág. 474.

Debido a esto, el Tribunal concluyó que las sentencias de cadena perpetua automáticas impuestas a menores culpables por ese delito son contrarias a la Octava Enmienda toda vez que, al establecer la misma pena para adultos y menores, se impedía que el juzgador considerara las características atenuantes de la culpabilidad del menor para disminuir la sanción penal que se impondría. Íd., pág. 476. Por ello, la Corte Suprema federal estableció que:

> But the mandatory penalty schemes at issue here prevent the sentencer from taking account of these central considerations. By removing youth from the balance—by subjecting a juvenile to the same life-without-parole sentence applicable to an adult—these laws prohibit a sentencing authority from assessing whether the law's harshest term or imprisonment proportionately punishes a juvenile offender. That contravenes *Graham* 's (and also *Roper* 's) foundational principle: that imposition of a State's most severe penalties on juvenile offenders cannot proceed as though they were not children. Íd., pág. 474.

Cónsono con estos pronunciamientos, en Miller v. Alabama, supra, el Tribunal enumeró una serie de factores

concomitantes que el juzgador tiene que tomar en consideración al momento de sentenciar a un menor de edad juzgado como adulto. **Estos son: (1) la edad cronológica del menor; (2) los rasgos de su carácter; (3) su nivel de madurez; (4) si tiende a incurrir en conducta de manera irreflexiva, sin ponderar sus consecuencias; (5) su historial familiar; (6) la funcionalidad del hogar en el cual se desarrolló; (7) su grado de participación en el delito, y (8) sus probabilidades de rehabilitación.** <u>Pueblo v. Álvarez Chevalier</u>, supra, pág. 754.

Finalmente, en <u>Montgomery v. Louisiana</u>, supra, el Tribunal Supremo federal pautó que <u>Miller</u> reconoció un derecho constitucional de naturaleza sustantiva que, por virtud de la Cláusula de Supremacía, aplica de forma retroactiva a los procedimientos colaterales postsentencia independientemente de que la sentencia sea final y firme. Íd., pág. 205-206; <u>Pueblo v. Álvarez Chevalier</u>, supra, pág. 749. Debido a ello, el Tribunal resolvió que, como regla general, todo menor sentenciado a cadena perpetua sin posibilidad de libertad bajo palabra tiene un derecho de naturaleza constitucional a no permanecer encarcelado el resto de su vida sin una consideración previa de su culpabilidad atenuada. <u>Montgomery v. Louisiana</u>, supra, pág. 210. Esto, ya que la protección constitucional que provee la Octava Enmienda permite la encarcelación perpetua por delitos cometidos durante la minoridad **<u>únicamente</u>** en escenarios excepcionales en los que el

delito refleja que el menor es irremediablemente "incorregible" Íd., pág. 209. Pueblo v. Álvarez Chevalier, supra, pág. 749.

Por tanto, los menores cuyos crímenes reflejen una inmadurez transitoria producto de su edad y de los factores concomitantes elaborados en Miller v. Alabama, supra, no deben ser condenados a cadena perpetua. A esos fines, la Corte Suprema federal estableció que, a la luz de la culpabilidad atenuada y la capacidad de cambio de un menor, Miller hizo claro que el castigo mayor (es decir, la cadena perpetua sin posibilidad real de salir en libertad bajo palabra) debe ser la excepción -no la regla general- al momento de sentenciar a un menor de edad juzgado como adulto. Montgomery v. Louisiana, supra, pág. 208. Véase también, Jones v. Mississippi, 141 S. Ct. 1307 (2021).

En ese sentido, para subsanar retroactivamente la legalidad de aquellas sentencias dictadas en contravención a Miller v. Alabama, supra, el máximo foro federal sugirió dos alternativas. Primero, la celebración de una vista donde se evalúen los factores concomitantes a la minoridad de edad que atenúan la culpabilidad del menor. Montgomery v. Louisiana, supra, pág. 212. Como segunda alternativa, sugirió que los estados podrían subsanar una sentencia cuyos términos violenten la norma pautada en Miller confiriéndole al convicto "la posibilidad de libertad bajo palabra". Íd.

En definitiva, estos precedentes establecen una norma clara: antes de sentenciar al menor juzgado como adulto, el tribunal tiene el deber de tomar en consideración las características inherentes a la minoridad que atenúan la pena y cómo estas militan en contra de un castigo de naturaleza irrevocable. Por tanto, toda sentencia impuesta a un menor de edad que se aparte de estos lineamientos debe ser revisada de acuerdo con las alternativas planteadas por la Corte Suprema federal.

Por tanto, a luz de la normativa constitucional firmemente desarrollada por la Corte Suprema federal, lo que procedía en este caso era que este Tribunal, en lugar de relegar su responsabilidad, pautara y reconociera la aplicabilidad de un Derecho constitucional fundamental a todo aquel recluso sin posibilidad de libertad bajo palabra que fue juzgado como adulto mientras era menor de edad y está cumpliendo una condena impuesta sin que se tuviera en consideración su culpabilidad atenuada por razón de su edad e inmadurez.

**III**

En el presente caso, el señor Torres Pérez argumenta que la sentencia que pesa en su contra es contraria a la Octava Enmienda de la Constitución de Estados Unidos y su jurisprudencia interpretativa. Le asiste la razón.

Como cuestión de umbral, debo enfatizar que tanto Miller como Montgomery resuelven que la imposición de una sentencia a un menor juzgado como adulto tiene que

responder a un análisis individualizado con especial atención a su edad y los factores concomitantes que atenúan su culpabilidad. Ciertamente, al momento de sentenciar al Peticionario, el foro primario no consideró su edad como una característica constitucionalmente relevante, puesto que le impuso una condena de 459 años en prisión. Por razones obvias, tampoco se consideraron los criterios establecidos en Miller, precedente que por su carácter retroactivo le aplica a la sentencia que pesa sobre el Peticionario.

Por tanto, aquí lo que procedía era una de dos (2) alternativas: devolver el caso al foro primario para la celebración de una vista de resentencia con el fin de evaluar los factores concomitantes a la minoridad de edad que atenúan la culpabilidad según esbozados en Miller v. Alabama, supra, o conferirle al señor Torres Pérez la posibilidad **real** de libertad bajo palabra.

En cuanto a esta segunda alternativa, estimo necesario consignar las razones por las cuales considero que, bajo la sentencia vigente impuesta al Peticionario, este no tiene una oportunidad verdadera de ser elegible a la libertad bajo palabra.

En Pueblo v. Álvarez Chevalier, supra, este Tribunal se rehusó a corregir una sentencia de 372 años impuesta a un menor de edad juzgado como adulto. Su reclamo, al igual que en el presente caso, era sencillo: que se le aplicara a su sentencia lo resuelto por Miller y se le concediera

la oportunidad de demostrar que se ha rehabilitado y que merece ser puesto en libertad. Esto, ya que su condena, en términos funcionales, era de cadena perpetua toda vez que para ser elegible a libertad bajo palabra primeramente tendría que cumplir 97 años de reclusión. Ante la negativa de un bloque de este Tribunal a conceder lo solicitado, emití un Voto particular disidente en el que expuse los fundamentos por los cuales sentencias tan extensas constituyen, de facto, condenas de por vida:

> Lo dictaminado por el máximo foro federal, de que los menores de edad son diferentes a los adultos, **no puede limitarse sólo a los casos de encarcelamiento de por vida.** Tal diferencia, de tomar la edad y las características de los jóvenes al momento de sentenciar, debe ser aplicada siempre y cuando se vaya a sentenciar a un menor de edad; **incluso, cuando no exista un esquema que obligue cierto tipo de sentencia por el crimen cometido. En consecuencia, opino que no existe distinción entre una condena de encarcelamiento de por vida y una sentencia de un término de varias décadas o de cientos de años. Ambas deniegan la oportunidad a la persona de regresar a la sociedad y ambas tienen el efecto de que el joven morirá en prisión.** Por todo lo anterior, considero que este Tribunal no debió permitir que aquellos a quienes el ordenamiento les atribuye una culpabilidad atenuada continúen cumpliendo el castigo más severo que nuestro ordenamiento permite. (Negrillas suplidas). Íd., págs 758-759.

A fin de cuentas, tal y como expuso el Profesor Luis E. Chiesa Aponte al analizar el caso antes citado,

**"[s]olamente el más radical formalismo permite hacer una distinción práctica entre noventa y siete años de prisión sin derecho a libertad bajo palabra y reclusión perpetua sin libertad bajo palabra. La vida y la libertad de los ciudadanos no deben depender de distinciones tan finas".**[3]

El mismo razonamiento aplica en este caso. De hecho, la situación del señor Torres Pérez es más delicada aún. Ello, puesto que enfrenta tres (3) barreras que le impiden tener una posibilidad real de cualificar para la libertad bajo palabra. La primera barrera son las sentencias consecutivas por las infracciones a la Ley de Armas, supra las cuales, en conjunto, totalizan 63 años. Estas prohíben expresamente que el Peticionario cualifique para el Programa de Libertad bajo palabra.[4] De modo que, al cabo de esas largas condenas, el señor Torres Pérez habría pasado toda su adultez tras las rejas. Cumplida esa sentencia, el Peticionario luego tendría que cumplir diez (10) años por cada uno (1) de los cuatro (4) asesinatos que pesan en su contra.[5] Es decir, según la sentencia cuya

_____

[3] (Negrillas suplidas). L. Chiesa Aponte, _Derecho Penal Sustantivo_, 88 Rev. Jur. UPR 149, 158 (2019).

[4] Véase, los artículos 5.04, 5.05, 5.06 y 5.15 de la Ley de Armas, supra, los cuales excluyen la posibilidad de que un convicto por infringir esas disposiciones pueda acogerse al beneficio de libertad bajo palabra y dispone que estas penas sean cumplidas consecutivamente.

[5] Esto, ya que el inciso (a) del artículo 3 de la Ley de la Junta de Libertad Bajo Palabra_,_ Ley Núm. 118 de 22 de julio de 1974, 4 LPRA sec. 1503, establece que **cuando la persona haya sido convicta por asesinato en primer grado, la Junta adquirirá jurisdicción cuando la**

revisión una mayoría de una Sala Especial de este Tribunal hoy deniega, el Peticionario tiene que permanecer en prisión 103 años antes de ser elegible para la libertad bajo palabra. Como agravante, este enfrenta otra barrera insuperable para salir de prisión: la imposición del pago de la sanción especial contemplada en el Código Penal de 1974, supra, la cual evidentemente no podrá satisfacer.[6]

Claramente, todas estas condiciones representan barreras insuperables para el señor Torres Pérez. Es más probable que el Peticionario pase el resto de sus días en prisión a que pueda ser elegible a libertad bajo palabra. Por eso, opino que la sentencia impuesta constituye de facto una cadena perpetua sin una oportunidad real de demostrar su rehabilitación. Por tanto, me reitero en que no existe distinción entre una condena de encarcelamiento de por vida y una sentencia de un término de cientos de años. Esto, pues, ambas niegan a la persona la oportunidad de regresar a la sociedad y tienen el efecto nocivo de que

---

**persona haya cumplido veinticinco (25) años naturales, o cuando haya cumplido diez (10) años naturales si la persona convicta por dicho delito lo fue un menor juzgado como adulto.**

[6]El artículo 49-C del Código Penal de 1974, supra establecía que, además de la pena que se imponga por la comisión de delito, el tribunal impondrá a todo convicto una pena especial equivalente a trescientos (300) dólares por cada delito grave las cuales ingresarán al Fondo Especial de Compensación a Víctimas de Delito. Véase, Pueblo v. Silva Colón, 184 DPR 759, 776 (2012).

ese menor juzgado como adulto tenga garantizada su muerte tras las rejas.

En definitiva, considero que condenar a un menor de edad procesado como adulto a 459 años en prisión sin que el Tribunal hubiese analizado las características inherentes a la minoridad que inciden en su toma de decisiones y, por tanto, disminuyen su culpabilidad, es el escenario que activa la aplicación retroactiva de la norma pautada en <u>Miller v. Alabama</u>, supra.

Por lo anterior, no puedo avalar la inacción de un bloque de este Tribunal cuando su principal consecuencia es la perpetuación de condenas penales contrarias a la Octava Enmienda. En consecuencia, procedía que este Tribunal expidiera el presente recurso y, de una vez, reconociera las garantías constitucionales y los precedentes del Tribunal Supremo federal en este tema. Por estos fundamentos, disiento del criterio mayoritario.

**IV**

De conformidad con lo anterior, revocaría los dictámenes de los foros recurridos y devolvería el caso al Tribunal de Primera Instancia para que celebrara una vista con el fin de evaluar los criterios aquí discutidos y se determinara si el Peticionario tiene derecho a ser resentenciado o a que se le concediera la oportunidad de

presentar una petición ante la Junta de Libertad Bajo Palabra.


                              Luis F. Estrella Martínez
                                   Juez Asociado